**Albert O. ROY, et al., Plaintiffs,**

v.

**AMERICAN PROFESSIONAL MARKETING, INC., an Oklahoma corporation, et al., Defendants.**

**No. CIV–84–305–P.**

United States District Court, W.D. Oklahoma.

Oct. 21, 1987.

Jerry Day, Shdeed & Hartman, Oklahoma City, Okl., for plaintiffs.

John Claro, Claro & Johnston, Oklahoma City, Okl., for defendant Beadle.

Robert H. Mitchell, P.C., Oklahoma City, Okl., formerly counsel for defendant Brown.

Brian Dell, Oklahoma City, Okl., formerly counsel for defendants Dover, Becket and Reiserer.

Wayne Mills, Oklahoma City, Okl., for defendant Singleton.

Richard Keirsey, Oklahoma City, Okl., for defendant Sineuri.

Robert Bourk, Oklahoma City, Okl., for defendants Brown, Reiserer, Dover and Becket.

## I. INTRODUCTION

PHILLIPS, District Judge.

This case involves massive non-compliance with the pretrial scheduling orders of this Court. After the submission of numerous affidavits dealing with the issue of non-compliance, as well as one evidentiary hearing and several hearings on the matter, the Court has determined that the im-

position of sanctions is warranted against five attorneys and one of the parties to this lawsuit.

## II. FACTS

This case involved a dispute arising out of the settlement of a previous lawsuit. Plaintiffs ("the Roy Group") were shareholders of and brought suit against AMPRO in Oklahoma County in 1981 for alleged irregularities in the management of the company. AMPRO and the Roy Group settled this litigation by written agreement whereby the Roy Group would tender back their shares of stock and dismiss the case with prejudice; in exchange, AMPRO agreed to pay the Roy Group $4.5 million in installments.

Subsequent to this settlement, AMPRO was sold to defendant Sineuri, a Panamanian corporation, which accepted responsibility for paying the Roy Group the settlement monies due. Sineuri then sold the stock of AMPRO to Dover Development, which liquidated the company in February of 1982. Dover then sold certain assets of AMPRO to Brown Educational Corporation ("BEC"). AMPRO was dissolved and BEC made a capital contribution of certain of these assets to a newly incorporated subsidiary of the BEC, American Professional Marketing, Inc. ("APMI"), which was formed on March 17, 1982.

In January, 1982 and January 1983, Sineuri paid two installments of $750,000.00 (total of $1.5 million) on the settlement agreement to the Roy Group. However, on September 1, 1983, Sineuri terminated its relationship with BEC and APMI and has made no other payments on the settlement agreement. The primary issue in the case was whether this restructural plan was a conspiracy to defraud the plaintiffs out of the monies due them or a legitimate series of business transactions to make an already feeble company a viable future entity.

The jury found in favor of the plaintiffs' theory of the case, rendering verdicts totaling $3.6 million against defendants American Professional Marketing, Inc., Dover Development, Inc., John Singleton, a Professional Corporation, Kenneth Reiserer, a Professional Corporation, Sineuri, Glenn J. Beadle and Johnny Brown.

This case was originally filed on January 31st, 1984. A status conference was held on October 9, 1986, setting the following deadlines:

1. Motions to join additional parties due by March 30, 1987.

2. Motions to amend pleadings due by March 30, 1987.

3. Plaintiff to submit final witness list by April 27th, 1987.

4. Defendant to submit final witness list by April 27th, 1987.

5. Plaintiff to submit final exhibit list by April 27th, 1987.

6. Defendant to submit final exhibit list by April 27th, 1987.

7. The discovery cutoff date was May 4th, 1987.

8. Plaintiffs' final contentions due by May 7th, 1987.

9. Defendants' final contentions due by May 14th, 1987.

10. Dispositive motions to be filed by May 11, 1987.

11. Stipulations to be filed any time.

12. Motions in limine to be filed by June 29th, 1987.

13. Proposed jury instructions to be filed by June 29th, 1987.

14. Joint case statement to be filed by June 29th, 1987.

15. Requested voir dire to be filed by June 29th, 1987.

16. Trial brief to be filed by June 29th, 1987.

17. Objections to trial submissions to be filed within five (5) days of their filing.

18. The final pretrial order to be filed by July 6, 1987.

19. Plaintiff to initiate settlement discussions by June 1, 1987, and report settlement status by June 8, 1987.

This Court was assigned this case on June 22, 1987, and the case was placed on the September trial docket. The Septem-

ber trial docket of this Court was called on September 9, 1987. At the time the docket was called, it was apparent to the Court that the parties had ignored many of the pretrial deadlines, and that the case was far from ready for trial. Rather than continue the case, the Court adjusted the position of this case on the Court's trial docket and held a series of early morning conferences to prepare this case while other cases proceeded to trial. Pretrial conferences were held in this case on September 11, 1987, September 14, 1987, September 17, 1987 at 7:30 a.m., September 18, 1987 at 5:00 p.m., September 22, 1987 at 7:30 a.m., September 23rd, 1987 at 8:30 a.m., and September 24th at 7:30 a.m. After numerous conferences, this case was tried to a jury from September 24th to October 1st, 1987. Numerous other conferences were also necessary, due to counsel's lack of compliance with the scheduling order, during the trial of this matter.

### III. NON-COMPLIANCE

The following is a synopsis of the parties' failure to comply with the pretrial deadlines set by the Court:

#### A. *Defendant Brown*

Defendant Brown's witness and exhibit lists were filed over three months late on August 6, 1987. Defendant Brown did not file any final contentions. Brown's Motion in Limine was filed a month late on July 30th, 1987. Defendant Brown's proposed jury instructions were filed over one month late on August 6, 1987. No joint case statement was ever filed. The trial brief of defendant Brown, due June 29, 1987, was not filed until August 10, 1987. The final pretrial order in this case was not submitted until Friday, September 11, 1987, at 5:00 p.m., over two months late. In short, defendant Brown did not comply with any of the requirements of the pretrial scheduling order in this case.

Defendant Brown was formerly represented by Robert Mitchell, who withdrew as his attorney on May 20, 1987. Robert Bourk entered his appearance for Brown on August 28, 1987. In response to a request from this Court, Mitchell submitted an affidavit setting forth the reasons for non-compliance with the scheduling order in this case (Mitchell affidavit, filed September 11, 1987). Robert Mitchell also appeared before the Court on Tuesday, September 22, 1987, and gave testimony related to his representation of defendant Brown. Mr. Mitchell indicated that, although repeated efforts to contact Brown were made, Brown never paid or contacted Mitchell from October 1986 until July 1987. Copies of correspondence from Mitchell to Brown in this regard are attached to Mitchell's affidavit. Defendant Brown responded by affidavit, filed September 14, 1987, and stated that Mitchell never indicated to Brown that he was going to withdraw. Brown further states that he did not receive any of the letters attached to the Mitchell affidavit or the Court Order allowing Mr. Mitchell to withdraw from the case.

The representations in the affidavit of defendant Johnny Brown are unpersuasive, at best. Brown states that he did not receive a copy of the Order allowing Mr. Mitchell to withdraw, nor did he receive the letter dated July 22nd, 1987, at his home or place of business. Brown continues, "whether someone at the office received the same is unknown to the affiant." (Brown affidavit at 2). This contention is directly controverted by the signed, return receipt of the July 22nd letter attached to Mr. Mitchell's affidavit which was signed by an agent of defendant Brown. These contentions were further controverted by the signed, return receipt of Mr. Mitchell's May 11, 1987, Application to Withdraw. *See* Court Exhibits 1–7, September 22, 1987. This receipt bears the signature of Johnny Brown. Although the Court invited defendant Brown to respond to this evidence, Brown declined the Court's invitation through his counsel, Mr. Bourk. Brown also was inexcusably without counsel for over three months before retaining Mr. Bourk well past the deadlines for pretrial submissions. Upon consideration of the affidavits and testimony presented, the Court finds that Brown's non-compliance with the orders of the Court is not attributable to Mr. Mitchell or Mr. Bourk. Rather,

Brown's non-compliance was due to his own total failure to communicate or cooperate with counsel. Further, the Court finds that the compliance affidavit submitted by Mr. Brown is misleading, if not false, in light of the unrebutted testimony and documentation produced by Brown's former counsel, Mr. Mitchell.

### B. *Defendant Sineuri*

Defendant Sineuri, a Panamanian corporation, has been represented throughout these proceedings by Richard Keirsey. No final contentions, joint case statement, requested voir dire, nor trial brief were ever filed on behalf of defendant Sineuri. No jury instructions were ever filed on behalf of Sineuri until Sineuri joined in the joint proposed instructions filed approximately three months late on September 23, 1987. Counsel for Sineuri also joined in the untimely filing of the final pretrial order. Mr. Keirsey's position on behalf of the defendant Sineuri is very clear. Keirsey offers no excuse for his failure to comply with the Order or his failure to file an Application for Extension of Time. He concludes his affidavit by candidly admitting "I was wrong."

### C. *Defendant Beadle*

Defendant Beadle has been represented throughout these proceedings by John Claro. Mr. Claro filed two requested jury instructions on behalf of his client approximately three months late on September 8th, 1987. No joint case statement, requested voir dire or trial brief were ever filed on behalf of Beadle by Claro. Again, and most importantly, no final pretrial order was submitted to the Court for approval until after the case was called for trial, more than two months after its required submission. Moreover, as the trial record in this case reflects, Mr. Claro's production of exhibits, including at least one critical

exhibit [the IRS audit report] was untimely and not in compliance with the orders of the Court. In fact, Mr. Claro produced numerous exhibits during the trial of this matter which opposing counsel had never seen, and which, in the Court's view, could and should have been produced earlier.

In response to this Court's Order requiring all counsel in the case to submit affidavits explaining the reasons for their non-compliance, Mr. Claro submitted a letter dated September 10th, 1987. In this letter, Claro makes clear his position that the blame belongs elsewhere. Initially, Claro points out that his client was merely a "peripheral" defendant and never shared a community of interest with the remaining defendants.[1] Mr. Claro, however, continually blames plaintiffs' counsel and the lack of "community of interest" with the other defendants for his own non-compliance.

As previously stated, Claro neglected to file requested jury instructions, requested voir dire, a trial brief, and produced a number of exhibits in an untimely fashion. As justification for his failure to file these pleadings, Mr. Claro states that it has always been the custom and practice in this district to file these items only where unusual questions of law or fact are presented. Setting aside this dubious contention, the fact of the matter is that this case presented a highly complex factual controversy. Moreover, there were also a number of disputed and complex legal matters. In addition, Mr. Claro was commenting upon and submitting proposed instructions even after the close of the evidence and up until the time the jury was actually instructed. As to the two instructions filed over two months late on September 8, 1987, Mr. Claro makes the following comments.

> Those two instructions (*and* the memorandum brief itself) do not set forth "anything new" in the context of the

---

1. This fact is also pointed out in the affidavit of Wayne Mills, counsel for defendant Singleton, where he states that "Mr. Claro's lack of community of interest seems to stem from the fact that he is willing to point the finger at anyone and everyone other than his client." Mills' affidavit continues: "In short, defendant Beadle's

counsel failed to cooperate in any sense of the word with the other lawyers in the case." Mr. Mills also points out that Claro only sent copies of his pleadings to plaintiffs' counsel and not to the other defendants' counsel, a wholly unacceptable practice.

instant case. The research on the subjects had already been done approximately a year earlier, and it would have been an easy matter to submit those two instructions on June 29th, 1987, as called for in the scheduling order, had we believed that such would be necessary.

The Court finds this reasoning is meritless. It is disingenuous to argue that none of these pretrial submissions were necessary in light of the numerous conferences necessitated by counsel's failure to file these items. Although Mr. Claro may have done the research over a year prior to trial, there was no reason to "spring" these items on the Court and opposing counsel on the eve of trial. Indicative of his pattern of "passing the buck," Mr. Claro concludes his letter to the Court with the following statement: "I feel like a non-combatant who has been 'sucker punched' while he thought he was standing safely in a neutral zone." The record in this case does not support this characterization. Mr. Claro, along with the other attorneys in this case, wholly failed in complying with the scheduling order and adequately preparing this case for trial.

## D. *Defendant Singleton*

Defendant Singleton was represented in this matter by Wayne Mills. Although Mr. Mills was the only defendant to request an extension of, and timely file, his proposed jury instructions, Mills submitted his final witness and exhibit lists approximately three months late on July 20th, 1987. In addition, no joint case statement, requested voir dire, nor trial brief were filed on behalf of defendant Singleton by Mr. Mills. Again, the final pretrial order was submitted to the Court for approval over two months late on September 11, 1987.

Mr. Mills offers no justification for missing these deadlines nor does the Court have any evidence before it which would indicate that the defendant Singleton was responsible for this non-compliance. Mills candidly acknowledged his failure to comply with the scheduling orders of this Court during the hearings held on this issue.

## E. *Defendants Reiserer, Becket and Dover*

These defendants were formerly represented by Brian M. Dell. On January 17, 1986, the judge formerly assigned to this case granted default judgment against defendants Dover and Becket as to certain issues in this case. In his affidavit, Mr. Dell states that in a subsequent status conference on or about October 9, 1986, Judge Alley asked Mr. Dell why he was appearing when his clients, Dover and Becket, were out of the case. Mr. Dell continues that he was somewhat "dumbfounded" by Judge Alley's "seeming dismissal from further proceedings." Mr. Dell states that, as a result, he "overlooked the continued representation of Reiserer, and offers no excuse for his failure to furnish the witness and exhibit lists on behalf of Kenneth Reiserer." (Affidavit of Brian Dell, September 15, 1987). Regardless of whether Dell's "confusion" over the continued representation of Dover and Becket was warranted, there is no justification for "forgetting" his representation of defendant Reiserer. No witness or exhibit list was filed on behalf of defendant Reiserer until Mr. Bourk filed them over four months late on August 31, 1987. In the hearings held during the trial of this matter, Mr. Dell appeared before the Court and acknowledged that he had no justification for his failure to comply with the pretrial order of this Court. Mr. Dell was given a further opportunity to give testimony on Wednesday, September 23, 1987, as to why sanctions should not be imposed and elected to stand on his affidavit.

## F. *Plaintiffs*

The plaintiffs have been represented by Jerry Day throughout these proceedings. There is no question that Mr. Day was in substantial compliance with the pretrial scheduling order as to those items not requiring his cooperation with defense counsel. However, the most glaring failure of Mr. Day was the failure to circulate and file a final pretrial order. Local Rule 17(D)(1) states:

Unless otherwise ordered by the Court, counsel for the plaintiff, with full and

timely cooperation of other counsel and pro se parties, is responsible for preparing, obtaining approval of all parties, and furnishing the Court any status reports, pretrial orders or other orders required by the Court or these Rules.

In his affidavit filed September 11, 1987, Mr. Day states that he was "prevented from complying with the Order of the Court regarding final pretrial order because of counsel for defendants' lack of full and timely cooperation as is evidenced by their lack of compliance with the deadlines established by the Court." (Affidavit of counsel for plaintiffs at 5). As previously stated, however, Mr. Day made no effort to apprise the Court of the problems in filing the final pretrial order, until one was finally submitted to the Court for approval over two months late on September 11, 1987, at 5:00 p.m., after the calling of the Court's September trial docket. Although all pretrial submissions are important to the Court, the final pretrial order is the essential tool for the Court in preparing for individual cases and in managing its overall trial docket. Regardless of the lack of cooperation among the attorneys, which was substantial in this case, when a deadline for a final pretrial order is so blatantly disregarded, the blame is clearly on all counsel involved. Put simply, Mr. Day had the responsibility under Rule 17 for filing the pretrial order and no pretrial order was filed until the eve of trial. In a complex case such as this, such a failure is inexcusable.

## IV. SANCTIONS

The Court has very broad discretion in the imposition of sanctions pursuant to Federal Rule of Civil Procedure 16(f), "which allows the imposition of sanctions to ensure that the lawyers fulfill their high duty to ensure the expeditious and sound management of the preparation of cases for trial." *American Medical Systems v. Picker International,* No. 85–1619, slip op. (10th Cir. March 30, 1987), citing *In the Matter of the Sanction of Baker,* 744 F.2d 1438, 1440 (10th Cir.1984), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985).

While this Court does not lightly impose sanctions, and does so reluctantly, the efficient management of its heavy caseload is of paramount importance. In managing and controlling this ever increasing caseload, the Court has the inherent and statutory power to sanction the parties or attorneys for failure to follow orders of the Court. *See generally Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *In re Baker,* 744 F.2d at 1442. In exercising this power, the Court has the authority to enforce its orders with a view toward promptly processing and adjudicating its lawsuits. *Stanley v. Continental Oil Co.,* 536 F.2d 914 (10th Cir.1976). The complete and total failure of counsel (and defendant Brown) in complying with the pretrial scheduling order and preparing this case for trial leaves this Court with no alternative. As previously stated, the conduct in this case worked an extreme hardship on the Court in that numerous hearings and long hours were necessary so that this case could proceed to trial. While all counsel vigorously and capably represented their clients in the actual trial of this case, their lack of cooperation, sloppy trial preparation, and failure to devote sufficient attention to the pretrial phase of this case is inexcusable. As a result, the Court imposes the following sanctions pursuant to Rule 16(f) of the Federal Rules of Civil Procedure, and the Local Rules of the Western District of Oklahoma:

Mr. John Claro, counsel for defendant Beadle, is sanctioned $500.00 for failure to comply with this Court's pretrial scheduling order.

Mr. Wayne Mills, counsel for defendant Singleton, is sanctioned $500.00 for failure to comply with this Court's pretrial scheduling order.

Mr. Richard Keirsey, counsel for defendant Sineuri, is sanctioned $500.00 for failure to comply with this Court's pretrial scheduling order.

Mr. Jerry Day, counsel for plaintiffs, is sanctioned $500.00 for failure to comply with this Court's pretrial scheduling order.

Mr. Brian M. Dell, formerly counsel for defendants Reiserer, Becket and Dover, is sanctioned $500.00 for failure to comply with this Court's pretrial scheduling order.

Mr. Johnny Brown, defendant, is sanctioned $1,000.00 for failure to cooperate with his counsel to comply with this Court's pretrial scheduling order, for failure to obtain new counsel for over three months following the withdrawal of Mr. Mitchell, and for his misleading representations to the Court in his affidavit regarding noncompliance in this case.

These sanctions may not be passed on to the litigants (in the case of the lawyers) or anyone else; in addition, they shall be paid to the Clerk of the Court within thirty (30) days of the date of this Order.

As an additional sanction, the Court orders attorneys John Claro, Wayne Mills, Richard Keirsey, Jerry Day, and Brian Dell to attend the seminar on November 23, 1987, entitled "Practicing in the Western District." A copy of the information relating to this seminar is attached to this Order. Within seven (7) days of the seminar, counsel will provide proof of attendance in the form of an affidavit filed with this Court. Alternatively, if counsel are unable to attend this seminar, they may, with approval of this Court, attend a similar seminar at any time within the next six (6) months, provided that such seminar is devoted primarily to practice and procedure in federal court. Absence from the November 23, 1987, seminar, however, as well as the substitution of another seminar in its place, will not be permitted absent further Order of this Court. Expenses associated with attendance at the seminar are to be borne personally by each counsel.

# —PRACTICING IN THE WESTERN DISTRICT—

*A unique opportunity to visit with the Magistrates and Judges and receive valuable tips for practice in federal court.*

Co-sponsored with the Federal Bar Association
and provided in conjunction with
the Admission Ceremony for New Admittees to the Western District

★★★★★★★★★★★                    ★★★★★★★★★★★

**Date &**
**Location:** November 23, 1987
Skirvin Plaza Hotel, Oklahoma City

**CLE Credit:** This course has been approved by the Oklahoma Bar Association Mandatory Continuing Legal Education Commission for 3 hours of mandatory CLE Credit, including .5 hours of ethics. For course approval in other states, contact the CLE Registrar.

**Tuition:** $60

**Cancellation Policy:** Cancellations will be accepted at anytime; however, a $25 fee will be charged for cancellations made within 48 hours of the seminar date.

**Program:** **Program Moderator: Tsu Louis Kreidler**
President, Federal Bar Association, and District Counsel, United States Small Business Administration

**7:30-7:45 REGISTRATION AND WELCOME**
**(Continental Breakfast Provided)**
............... J. Edward Barth, Chairman
................ John N. Hermes, Member
............... William J. Ross, Member
Committee on Admissions and Grievances
Western District of Oklahoma

**7:45-8:45 TIPS FROM THE JUDGES**
.......... The Honorable Wayne E. Alley
United States District Judge
Western District of Oklahoma
Oklahoma City
......... The Honorable David L. Russell
United States District Judge
Western District of Oklahoma
Oklahoma City
...... The Honorable Ralph G. Thompson
United States District Chief Judge
Western District of Oklahoma
Oklahoma City
*An opportunity to hear from each judge the specific procedures which are followed in his courtroom.*

**8:45-9:30 KNOW THE CLERK'S OFFICE**
..................... Robert D. Dennis
Federal Court Clerk
Western District of Oklahoma
Oklahoma City
*Rejection of papers; Service of process; Taxing of costs; An opportunity to meet the deputy clerks who work for the district judges — what role do the clerks play? (i.e., setting cases, referral to magistrates).*

**9:30-9:45 BREAK**

**9:45-10:45 MEET THE MAGISTRATES**
........... The Honorable Doyle W. Argo
United States Magistrate
Western District of Oklahoma
Oklahoma City
....... The Honorable Robin J. Cauthron
United States Magistrate
Western District of Oklahoma
Oklahoma City
...... The Honorable Ronald L. Howland
United States Magistrate
Western District of Oklahoma
Oklahoma City
................ The Honorable Pat Irwin
United States Magistrate
Western District of Oklahoma
Oklahoma City
*Settlement conferences; Discovery hearings; Pretrial conferences; Referral procedures*

**10:45-11:15 UNIQUE PROCEEDINGS IN FEDERAL COURT** ............... Ann D. Marshall
Arbitration Law Clerk
Western District of Oklahoma
Oklahoma City
*Summary jury trials; Arbitration; Settlement conferences*