G.J.B. & ASSOCIATES, INC., a Florida Corporation; Glenn J. Beadle; Ruth Beadle, on their own behalf, and as to the causes of action asserted on behalf of Brown Educational Corporation, for its use and benefit on a derivative basis; Albert O. Roy; Mark V. Berland; Robert J. Quinn; Winston Churchill; W.B. Pearson; Ann L. Giordano; Harlan L. Berland; Darrell J. Lundgren; and C.C. Pollen Company, Plaintiffs,

v.

John D. SINGLETON; Kenneth H. Reiserer; Beckett Partnership; Johnny Brown; Brown Educational Corporation; Richard Brooke; John Does 1 Through 20; Betty Brown, also known as "Boots"; Ann Margolis, Special Administrator of the Estate of Harry Margolis; and John D. Singleton, doing business as Singleton & Reiserer, Defendants.

Earl D. MILLS; W. Wayne Mills; and Robert F. Bourk, Appellees,

v.

John A. CLARO, Movant–Appellant.

No. 88–2249.

United States Court of Appeals, Tenth Circuit.

Sept. 5, 1990.

John A. Claro, pro se, David Morse and Jay D. Adkisson on the brief, Claro & Johnston, Oklahoma City, Okl., for movant-appellant.

No appearance for appellees.

Before LOGAN, SETH and BALDOCK, Circuit Judges.*

BALDOCK, Circuit Judge.

Movant-appellant John Claro, an attorney, challenges the district court's sua sponte imposition of sanctions upon him for violating Fed.R.Civ.P. 11 & 16(f) during trial of a legal malpractice action. Reviewing the district court's determination under an abuse of discretion standard, *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) (Rule 11 standard); *Ikerd v. Lacy*, 852 F.2d 1256, 1258 (10th Cir.1988) (Rule 16(f) standard), we sustain the Rule 16(f) sanction as lawfully imposed, but vacate the Rule 11 sanction for want of procedural due process.[1]

I.

On direct examination, Claro was questioning his client, plaintiff Glenn Beadle, about a critical meeting with the defendant tax attorneys. Claro asked Beadle if he had taken any notes during the meeting and whether the notes would refresh Beadle's recollection of the meeting. Rec. vol. VIII at 73. When Beadle answered "yes," to both inquiries, defendants' respective counsel objected because they had not received a copy of the notes and were unaware of their existence, despite four years of litigation and a notice of deposition duces tecum requesting Beadle to provide "[a]ny and all documents and/or evidence" in support of his allegations. *Id.* at 73–74. Claro's response to the court was threefold: (1) the defendants did not request the notes, (2) the notes were not exhibits to be submitted into evidence, and (3) the notes were "absolute just hen-scratching." *Id.* at 76–77. The district court found that Claro should have produced the notes to defense counsel pursuant to their discovery request

---

1. As a preliminary matter, before us is Claro's motion to supplement the record on appeal with the deposition testimony of his client, Glenn Beadle, taken on April 15 and June 3, 1988. Beadle's June 3 testimony is already part of the record by way of an addendum to Claro's appellate brief. *See* Fed.R.App.P. 30 (directing appellant to submit appendix to briefs containing, among other things, parts of the record to which parties wish to direct attention of the court). Our review of the record reveals that Beadle's April 15 testimony would not materially assist us in resolving this appeal. Accordingly, the motion is denied.

once Beadle located the notes and Claro knew the notes would be used at trial. *Id.* at 79–80.[2]

The district court permitted Claro to continue his examination of Beadle without the notes for the remainder of the day. At day's end, however, the court found that Claro had failed to comply with (1) the court's pretrial scheduling orders and (2) his continuing duty to produce requested discovery documents. *Id.* at 97. The court directed Claro to give defense counsel an opportunity to depose Beadle based on the notes. The court, which earlier had sanctioned Claro in related litigation for similar misconduct, *Roy v. American Professional Mktg., Inc.,* 117 F.R.D. 687, 690–91 (W.D. Okla.1987), further ordered him to pay all fees and costs associated with Beadle's deposition in lieu of striking Beadle's testimony. *Id.* at 98–99.[3] The following day, the district court entered a written order reprimanding Claro for his conduct. Rec. vol. I at doc. 439. A copy of the order was disseminated to all federal judicial officers in the Western District of Oklahoma.

Thereafter, Claro filed a motion under Fed.R.Civ.P. 60(b)(1) & (6) to vacate the district court's order, asserting that the court (1) denied him notice and hearing, and (2) lacked any pretrial or discovery orders to support a reprimand. Rec. vol. I at doc.

455. At the motion hearing, the district court read to Claro the language of its April 20, 1988 pretrial standing order requiring "plaintiffs to identify the specific exhibits to be introduced *or discussed* in connection with the direct examination of each witness." Rec. vol. XII at 6–7 (emphasis in original). The court reminded Claro that this language was incorporated into its standing order as a direct result of complaints the court received concerning Claro's trial tactics in the *Roy* case. *Id.* at 6, 17–19. The district court rejected as "patently frivolous" Claro's argument that the notes were not "exhibits" within the meaning of the court's standing order. *Id.* at 36. At the conclusion of the hearing, the court entered detailed findings into the record and sanctioned Claro $185 for his failure to reveal the notes to opposing counsel prior to Beadle's direct examination. *Id.* at 35–40. The court then imposed an additional $185 sanction upon Claro for filing a "frivolous" motion to vacate. *Id.* at 39. The $370 sanction represented four hours of opposing counsel's billable time. Lastly, the district court admonished Claro that it would report any future misconduct to disciplinary authorities. *Id.* at 40. That same day, the court entered a minute order imposing the cost of Beadle's deposition upon Claro as well. Rec. vol. I at doc. 484.

2. The district court admonished Claro:

> THE COURT: All right. They're [the notes] clearly, clearly documents that should have been produced earlier. They're notes that go directly to the issue in this case. And this—all I can say is this is just so typical of what I expected from the plaintiff in this case....
>
> Mr. Claro, please don't pull any more stunts like this during this trial. These notes—any competent lawyer knew these notes were going to be an issue. And for you to spring these notes on opposing counsel in the middle of the direct examination of your client in this case is absolutely *ridiculous....*
>
> Boy, I'll tell you, I sure would hate to try a lawsuit against you, because there's a new surprise every day. Every day there's a new surprise. You know, how would you like it if they started springing this kind of stuff on you in the middle of trial?
>
> This is not the way to try a lawsuit. I don't care whether you had them [the notes] at the time of this [defendants' discovery request] or not, you had a duty, an ethical duty, to contin-

> ue to comply with this request. Jiminy Christmas.

Rec. vol. VIII at 78–79.

3. The district court lectured Claro a second time:

> THE COURT: Mr. Claro, I don't want to have this happen in my courtroom again. This is just black letter, basic, fundamental trial practice. It's just as simple and clear as a bell. If your client finds notes that involve a meeting that involves advice from the two people that are on trial in this case, you can't hide them. You can't sit on them. You can't play trial by ambush. You have to produce them to the other side....
>
> You have an ethical duty as a lawyer to do that. You're under the order of the Court to do that with respect to all requests for admission and requests for production of documents....
>
> Now do you have any quarrel with anything I've said?
>
> MR. CLARO: No sir....

Rec. vol. VIII at 94–96.

## II.

Initially, we express concern over our jurisdiction to consider Claro's appeal although the issue has not been raised. *See* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties *or otherwise* that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.") (emphasis added). Claro filed his notice of appeal within thirty days after the district court's order ruling on his motion to vacate and setting the amount of his fine, *see* Fed.R.App.P. 4(a)(1), but before the district court's denial of his client Beadle's motion for judgment notwithstanding the verdict under Fed.R.Civ.P. 59(e). *See* Fed.R.App.P. 4(a)(4) (notice of appeal filed before disposition of Rule 59(e) motion ineffective). Thus, we have jurisdiction over Claro's appeal only if an order imposing sanctions against an attorney currently of record represents a "final decision" under 28 U.S.C. § 1291 or comes within an exception to the § 1291 finality requirement. Otherwise, Claro's notice of appeal was prematurely filed.

### A.

■ Under 28 U.S.C. § 1291, circuit courts "have jurisdiction of appeals from all final decisions of the district courts...." The Supreme Court has described a final decision as generally "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). To date, only the Ninth Circuit has held that an order imposing sanctions upon counsel currently of record is final and appealable under § 1291 when imposed. *E.g., Mesirow v. Pepperidge Farm, Inc.*, 703 F.2d 339, 345 (9th Cir.), *cert. denied*, 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983). In contrast, a number of circuits have held that a sanc-

tion order against present counsel is not a final decision within the meaning of § 1291 because an adjudication on the merits of the underlying controversy has yet to occur. *E.g., DeSisto College, Inc. v. Line*, 888 F.2d 755, 761–62 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2219, 109 L.Ed.2d 544 (1990); *In re Licht & Semonoff,* 796 F.2d 564, 569–70 (1st Cir.1986); *Frazier v. Cast,* 771 F.2d 259, 261 (7th Cir.1985).

Without undue analysis, we join the majority of circuit courts that have addressed the issue and hold that a sanction order against an attorney currently of record is not a final decision for purposes of a § 1291 appeal where the underlying controversy remains unresolved. *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373–75, 101 S.Ct. 669, 672–74, 66 L.Ed.2d 571 (1981) (general requirement of § 1291 is that all appeals await final judgment on the merits). At the time of the district court's sanction order, Claro was actively representing a party to the litigation. Consequently, Claro had a continuing interest in and connection to the litigation. We cannot consider the sanction order, which resulted from Claro's failure to disclose notes relating to the substance of his client's malpractice claims against defendants, as wholly separate from the merits of the case.

### B.

■ Despite their general agreement on the interlocutory nature of a sanction order against counsel of record, the circuit courts are sharply divided on the question of whether such an order is immediately appealable as an exception to the "final decision" rule under the collateral order doctrine first announced in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[4] "To

---

**4.** From the inception of the Federal Judiciary Act of 1789, Congress has deemed it appropriate that, with certain exceptions, appellate review should await a final judgment of the trial court, and has restricted appellate jurisdiction accordingly. The *Cohen* doctrine is, of course, a judge-made exception to the final judgment rule. The

statutory exceptions to the rule, inapplicable in this instance, are found in 28 U.S.C. § 1292 (providing for appeal of certain interlocutory orders by right and others at the discretion of both trial and appellate courts), 28 U.S.C. § 1651 (federal courts may issue all writs necessary and appropriate in aid of their jurisdic-

come within the '*small class*' of decisions excepted from the final-judgment rule by *Cohen*, the order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (emphasis added). The Second, Seventh and Eleventh Circuits have held that an order imposing sanctions upon an attorney is immediately appealable under the *Cohen* doctrine. *Cheng v. GAF Corp.*, 713 F.2d 886, 889–90 (2d Cir.1983) (§ 1927 sanctions); *Frazier*, 771 F.2d at 262 (Rule 11 sanctions); *DeSisto College*, 888 F.2d at 762–63 (Rule 11 sanctions). In denying an immediate appeal of attorney sanctions, however, the First, Third and Fifth Circuits have relied on the third requisite of the *Cohen* doctrine to hold that postponing the appeal would not cause the sanctioned party irreparable harm. *In re Licht & Semonoff*, 796 F.2d 564, 570–73 (1st Cir.1986) (Rule 26(g) sanctions); *Eastern Maico Distrib., Inc. v. Maico–Fahrzeugfabrik*, 658 F.2d 944, 948–49 (3d Cir.1981) (Rule 37(a)(4) sanctions); *Click v. Abilene Nat'l Bank*, 822 F.2d 544, 545 (5th Cir.1987) (Rule 11 sanctions).

Since *Cohen*, the Supreme Court has attempted to define when an order is "effectively unreviewable on appeal from a final judgment." In *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971), the Court indicated an appeal of a collateral order is permissible only when the "denial of immediate review would render impossible any review whatsoever of an individual's claims...." And in *United States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552–53, 56 L.Ed.2d 18 (1978), the Supreme Court described the third requirement of *Cohen* as involving "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." Given this definite language, we agree with Judge Timbers assessment:

> [Supreme Court decisions] clearly indicate that the effectively unreviewable requirement imposes a heavy burden on a party seeking review of an interlocutory collateral order. Clearly the Supreme Court, when using language such as rendering any review "impossible" or "destroying" a party's right to appeal, did not contemplate that a court of appeals would find the collateral order doctrine apposite when the prospect of a party losing his right to appeal from a collateral order after entry of final judgment is mere speculation—and especially when it is more probable that no injury will occur if an appeal is postponed until after entry of judgment in the underlying action.

*Cheng*, 713 F.2d at 894–95 (Timbers, J., dissenting); *accord In re Licht & Semonoff*, 796 F.2d at 571.

The closest we have come to addressing the issue is our decision in *D & H Marketers, Inc. v. Freedom Oil & Gas, Inc.*, 744 F.2d 1443 (10th Cir.1984) (en banc). In that case, we recognized that *Cohen* and its progeny would not permit us to establish a broad rule permitting interlocutory appeals of sanction orders; accordingly, we held that a district court's sanction order defaulting some but not all the parties to the lawsuit was not appealable until termination of the entire matter. The en banc court noted: "*Attorneys* and parties will be fully aware that *they* must bear the burden of sanctions to the conclusion of the case and appeal on the merits of the fully adjudicated case...." *Id.* at 1446 (emphasis added).[5]

---

tion), and Fed.R.Civ.P. 54 (in actions involving multiple claims or parties, trial court may direct entry of final judgment as to fewer than all claims or parties).

**5.** In *D & H Marketers*, we limited our earlier decision in *Ohio v. Arthur Anderson & Co.*, 570 F.2d 1370 (10th Cir.), *cert. denied*, 439 U.S. 833, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978), to its facts. In *Ohio*, we held that a sanction order against a party was immediately appealable under *Cohen*. We later explained that in *Ohio* we were concerned with a sanction order which if complied with may have put the sanctioned party in violation of foreign law. If the sanction had been erroneously imposed and left until the conclusion of the case, we might have been unable to ameliorate the consequences on a later appeal

Mindful of Supreme Court precedent and our language in *D & H Marketers*, we join the First, Third and Fifth Circuits and hold that a sanction order against counsel currently of record is not appealable under the *Cohen* collateral order exception to the final judgment rule.[6] Instead, counsel must await the conclusion of the underlying lawsuit and then appeal under § 1291. We reject any notion that an attorney risks losing the right to appeal if the parties settle or elect not to appeal from the final judgment. *Contra DeSisto*, 888 F.2d at 763; *Frazier*, 771 F.2d at 262; *Cheng*, 713 F.2d at 890. In *Dietrich Corp. v. King Resources Co.*, 596 F.2d 422, 423–24 (10th Cir.1979), we held that a legal consultant to lead counsel in the case could appeal the district court's fee determination: "Obviously under all the circumstances [the consultant] is an aggrieved party and his property interest can be protected only by recognizing this as one of those extraordinary cases where a nonparty may be allowed to appeal." With *Dietrich* as controlling precedent, we see nothing to prohibit an attorney of record from appealing a sanction order when the main case concludes. Such an appeal is best heard after final judgment since the appellate court will likely need to review the record as a whole to determine the propriety of sanctions. *In re Licht & Semonoff*, 796 F.2d at 572. This is especially true where, as here, the sanctions arise from a discovery dispute over the relevance of certain documents to the case.

Like the Third Circuit in *Eastern Maico*, 658 F.2d at 949, we also are concerned about the possibility of delay if an attorney may appeal immediately the imposition of sanctions. Indeed, it would be ironic to allow an appeal from a sanction order, inevitably delaying lower court proceedings, when that order may have resulted from tactics that already unjustifiably delayed the proceedings. While we are aware that a sanction order may have some affect on the attorney-client relationship, *Thomas E.*

*Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 686 (2d Cir.1989), this possibility alone is not enough to make the order "effectively unreviewable" at a later time. An attorney's obligation is to serve the client's interests at all times ethically. *See Evans v. Jeff D.*, 475 U.S. 717, 727–28, 106 S.Ct. 1531, 1537–38, 89 L.Ed.2d 747 (1986).

### C.

■ Applying our holding to the instant case would result in the dismissal of Claro's appeal as prematurely filed. Whether our holding should apply to this appeal, however, depends upon three factors first enunciated in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971): Before applying a decision nonretroactively, we must consider whether (1) the decision establishes a new principle of law the resolution of which was not clearly foreshadowed, (2) the decision's purpose would be retarded by its retroactive application, and (3) the decision's retroactive application would produce inequitable results. *Accord American Trucking Assoc., Inc. v. Smith*, — U.S. —, 110 S.Ct. 2323, 2331, 110 L.Ed.2d 148 (1990) (plurality). As we noted in *Jackson v. City of Bloomfield*, 731 F.2d 652, 654 (10th Cir. 1984) (en banc): "This 'approach has consistently been utilized where ... aspects of the timeliness of a claim are at issue.'" (quoting *Occhino v. United States*, 686 F.2d 1302, 1308 n. 7 (8th Cir.1982)).

Our holding that a sanction order against an attorney presently of record is not immediately appealable undoubtedly establishes a new principle of law in this circuit which was not clearly foreshadowed by prior decisions. The sharp split between the circuit courts as to the *Cohen* doctrine's applicability and the absence of any binding circuit precedent made our holding difficult, if not impossible, to foretell. Consequently, to apply our holding retroactively would be inequitable. The malpractice action underlying Claro's appeal has long since reached final judgment in the district

---

resulting in irreparable harm to the appellant. *D & H Marketers*, 744 F.2d at 1446.

6. We express no opinion on the appealability of sanctions against a nonparty or an attorney no longer involved in the case.

court and has recently been affirmed on the merits in this court. *G.J.B. & Assoc., Inc.. v. Singleton,* Nos. 88–2571 & 88–2640, unpub. order. (10th Cir. Aug. 3, 1990). If we dismiss Claro's appeal for want of jurisdiction, he will be remediless for the time has passed to file a new notice of appeal from the final judgment. While the aim of our holding—to effectuate the purposes of the final judgment rule—would not be hampered by its retroactive application, the small benefit we would gain by applying our holding retroactively does not outweigh the inequity which would result from such a determination. Accordingly, we conclude that our holding should not apply retroactively, and now turn to the merits of Claro's appeal.

### III.

■ The due process clause of the fifth amendment, U.S. Const. amend. V, requires that an attorney facing sanctions in federal court be given notice and an opportunity to be heard before final judgment. *White v. General Motors Corp.,* 908 F.2d 675, 686 (10th Cir.1990). The process due, however, depends upon the severity of the considered sanctions: "The due process concerns posed by an outright dismissal are plainly greater than those presented by assessing counsel fees against lawyers." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 n. 14, 100 S.Ct. 2455, 2464 n. 14, 65 L.Ed.2d 488 (1980), *superceded by* 28 U.S.C. § 1927 (as amended Sept. 12, 1980). Likewise, the process due if a district court threatens to strike testimony is more substantial than that required for the imposition of attorneys' fees and costs related to a deposition, the latter being a relatively moderate sanction. *See In re Sanction of Baker,* 744 F.2d 1438, 1441 (10th Cir.1984), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985) ($350 sanction considered modest); *see also* rec. vol. VIII at 98–99. Yet prior to imposing fees and

costs upon an attorney for whatever reason, the district court should provide the attorney with an opportunity to fully brief the issue. An oral or evidentiary hearing, however, is not required. *Braley v. Campbell,* 832 F.2d 1504, 1514–15 (10th Cir.1987) (en banc); *compare Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1466 (10th Cir.1988) (due process does not require separate oral hearings on whether monetary sanctions are warranted and the amount to be imposed). If the district court ultimately imposes sanctions, detailed findings are necessary to identify the objectionable conduct and provide for meaningful appellate review. *Braley,* 832 F.2d at 1513.

### A.

■ Cognizant of the fundamental nature of due process demands, we have no choice but to set aside that portion of the district court's order imposing Fed.R.Civ.P. 11 sanctions upon Claro for filing a "frivolous" motion to vacate the sanctions relating to his nondisclosure of pertinent documents. Claro was given neither notice that the court was considering Rule 11 sanctions, nor an opportunity to respond either before or after their imposition. At the conclusion of the hearing on the motion to vacate, the district court simply imposed an additional $185 sanction on Claro sua sponte.[7] The district court's error in failing to provide Claro any due process whatsoever in relation to the Rule 11 sanctions constitutes an abuse of discretion. *Cooter & Gell,* 110 S.Ct. at 2459 (district court's legal errors in imposing sanctions constitute an abuse of discretion). On remand, the district court must provide Claro with the required process if the court wishes to reconsider Rule 11 sanctions against Claro in view of this opinion.

### B.

The district court's Fed.R.Civ.P. 16(f) sanctions against Claro require a more involved analysis. Rule 16(f) provides:

> er to be a frivolous motion for reconsideration and for attending the hearing. So the total sanction to be imposed in this case will be [$370]."
>
> Rec. vol. XII at 39.

7. The district court's discussion on the frivolity of Claro's motion to vacate was indeed brief: "I'm going to require that the sanctions be paid forthwith in the amount of $185. I'm going to add to that an additional hour of counsels' time in responding to what I consid-

If a party or a party's attorney fails to obey a scheduling or pretrial order ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just.... In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

The purpose of this provision is two-fold: (1) to insure efficient case management and disposition and (2) to compensate opposing parties for the inconvenience and expense resulting from an adversary's noncompliance with these objectives. *In re Sanction of Baker,* 744 F.2d at 1440–41. Thus, under Rule 16(f), "neither contumacious attitude nor chronic failure is a necessary threshold to the imposition of sanctions." *Id.* at 1440.

### 1.

■ Claro's argument that he did not violate a court order is meritless. The notes from his client Beadle's meeting with the defendants quite properly could be deemed "exhibits" under the district court's pretrial standing order requiring the identification of exhibits "to be introduced *or discussed*" during the direct examination of witnesses. *See supra,* slip op. at 826–827. The district court surely knows more about the meaning of its own orders than we do, and we are not prepared to second guess its construction. *See Missouri v. Jenkins,* —— U.S. ——, 110 S.Ct. 1651, 1662, 109 L.Ed.2d 31 (1990) (accepting Eighth Circuit's interpretation of its own order). Counsel appearing before the district court are duty-bound to know the practice of the district court. This is especially true of Claro, who should have been most cautious following the district court's imposition of sanctions against him in the related *Roy* case. *See* 117 F.R.D. at 687, 690–91. ■

■ ] Arguably, Claro also had a duty to disclose the notes under his continuing duty to supplement discovery as provided in Fed.R.Civ.P. 26(e)(2)(B). A party has a duty to amend a prior response to a request for discovery "if the party obtains information upon the basis of which ... the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." Although defense counsel had requested all documents pertaining to the complaint's allegations, Claro declined to surrender voluntarily the notes. Claro's assertion that because the notes were used only to refresh his client's memory, he had no duty to reveal the notes is ridiculous. Admittedly, Fed.R.Evid. 612 requires only that such writings be produced at the hearing. But nothing in the rule suggests that an attorney may conceal the writings until ready to spring them on the court and opposing counsel in the midst of a witness' direct examination. Under Claro's interpretation of Rule 612, writings used to refresh a witness' memory would be discoverable only upon the objection of opposing counsel at trial.

### 2.

■ Following objection at trial, the district court immediately gave Claro an opportunity to justify why his client's notes had not been provided to defense counsel prior to Beadle's direct examination. *See generally* rec. vol. VIII at 73–80. Claro had no adequate response. *See supra,* op. at 825. At that time, the court did not refer to any impending sanctions against Claro. The court, however, returned to the subject at the end of the day, (1) finding Claro in violation of court orders, (2) indicating Claro would be responsible for the fees and costs of Beadle's deposition based on the notes and (3) asking Claro twice whether he had any comments to make. *See generally* rec. vol. VIII at 94–101. We believe the district court's actions in imposing Rule 16(f) sanctions upon Claro sufficient to comport with due process given the sanctions' moderate nature. *See Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct.

832

2593, 2600, 33 L.Ed.2d 484 (1972) (procedural protections required by due process vary with circumstances). Albeit rudimentary, Claro was provided with minimally adequate notice and opportunity to be heard under the circumstances. Rule 16(f) bound the district court to impose the expenses incurred due to Claro's noncompliance with the rule upon Claro unless the court found that his noncompliance was "substantially justified."

Lest there be any doubt as to the sufficiency of this process, we conclude that the district court's subsequent hearing on Claro's motion to vacate, at which the court set the amount of sanctions based on opposing counsel's affidavits, was sufficient to cure the defect, if any, in the process Claro previously received. *Braley*, 832 F.2d at 1504; *see also United States Postal Serv. v. National Assoc. of Letter Carriers*, 847 F.2d 775, 778 (11th Cir.1988) ("Cases have consistently held that a violation of procedural due process may be waived or cured."). Claro's brief in support of his motion to vacate fully addressed the issue of Rule 16(f) sanctions, and the district court's hearing provided Claro with an additional opportunity to persuade the court why Rule 16(f) sanctions were unwarranted.

AFFIRMED IN PART, VACATED IN PART and REMANDED.