In re M & L BUSINESS MACHINES CO., INC., Debtor.

BAKER & HOSTETLER, Appellant,

v.

Christine J. JOBIN, as Trustee of the Bankruptcy Estate of M & L Business Machine Co., Inc., and M & L Business Machine Co., Inc., Appellee.

Civ. A. No. 92–K–1555.
Bankruptcy No. 90 15491 CEM.
Adv. No. 92 1666 RJB.

United States District Court, D. Colorado.

April 9, 1993.

Timothy G. Beyer, Michael G. Martin, Baker & Hostetler, Denver, CO, for appellant.

Christine J. Jobin, Katch, Sender, Wasserman & Jobin, Denver, CO, trustee.

## MEMORANDUM DECISION
## ON APPEAL

KANE, Senior District Judge.

This case is before the court on Baker & Hostetler's (B & H) appeal from an order of the bankruptcy court awarding Christine Jobin (Trustee) $3,503.71 in attorney fees incurred in defending an action brought by the Resolution Trust Company (RTC). The RTC was the debtor's sole secured creditor. In that capacity it claimed entitlement to $75,000 the trustee received from Robert G. Joseph (Joseph) former president of the debtor. The bankruptcy court disagreed, ruled the $75,000 was property of the bankruptcy estate, and awarded the trustee her attorney fees as a sanction against B & H under Bankrupt.R. 9011. In this appeal, B & H claims that the bankruptcy court lost jurisdiction to award the attorney fees, that B & H did not have sufficient notice or opportunity to be heard concerning the appropriateness of sanctions, and that its conduct, in any event, was not sanctionable. For the reasons discussed below, I conclude that the bankruptcy court did have jurisdiction to award the fees, but did not give B & H an adequate opportunity to contest the appropriateness of the sanctions imposed. Therefore, I reverse and remand for a new sanctions hearing and do not reach the merits of the sanction itself.

### I. Facts and Procedural History

The Capital Federal Savings and Loan Association of Denver loaned the debtor 6.3 million pursuant to a note and security agreement. The agreement gave Capital Federal a security interest in all inventory, equipment, accounts chattel paper and general intangibles, and proceeds the debtor then or later owned. The debtor defaulted on the note on April 2, 1990. The RTC, became receiver for the failed Capital Federal Savings & Loan Association of Denver on June 15, 1990.

On October 1, 1990, M & L filed a chapter 7 petition. It was later converted to a chapter 11 proceeding and then again converted to a chapter 7 case on September 26, 1991. The trustee and the RTC had been led to believe that the debtor had an inventory of computers worth approximately 2.5 million. The bankruptcy court had accordingly ordered the debtor to open a cash collateral account into which it was supposed to deposit the proceeds from the sale of the existing inventory together with any other funds received. Joseph, as president of M & L, repeatedly asserted that the bank had cash collateral totalling more than 1 million.

On January 23, 1991, the bankruptcy court ordered M & L to turn over all cash collateral to the trustee on or before January 28, 1991. When M & L did not, the trustee took a note from Joseph for $945,000 secured by Joseph's personal jewelry. After Joseph defaulted on the note, the trustee sold the jewelry for $75,000.

The RTC filed an adversary proceeding against the trustee on September 5, 1991. Its complaint asked the bankruptcy court to determine that it had a superior interest in the $75,000 by virtue of its own note. The trustee moved for summary judgment and for sanctions on October 11, 1991, asserting that the RTC had no claim to the proceeds because the jewelry and proceeds were not cash collateral or traceable to it. The bankruptcy court denied the motion on November 12, 1991 as premature, but specifically told the trustee she could renew the motion upon completion of discovery.[1]

On December 20, 1991, the parties signed and filed a joint pretrial statement, listing claims, defenses, witnesses, exhibits and the like. On the same day the trustee renewed her motion for summary judgment and sanctions. After RTC responded, the bankruptcy court set a hearing for February 18, 1992. It entered its written order on February 27, 1992. It granted summary judgment in the trustee's favor on two issues: judicial estoppel and post-peti-

---

1. "Well, Mr. Martin [Counsel for RTC], I think you have a real tracing problem. I'm going to at this time deny the motion for summary judgment because I think it's a little premature.... [B]ut I think you have a real tracing prob-

lem.... [It] is a very specific and demanding doctrine and I suggest that you review the cases on that because what you have now doesn't make it." R. Vol. III, 16–17.

tion diversions. It refused to rule that the RTC had a security interest in a general intangible that arose because of certain pre-petition diversions by Joseph. It also could not determine what consideration Joseph gave to the trustee for the note.

> It may be ... that the RTC has a security interest in a general intangible that arose because of pre-petition diversions; however, it is unclear whether the pre-petition diversions were consideration for the note given by Mr. Joseph. The Court cannot tell ... whether the trustee knew of the pre-petition diversions when she took the note or if she took the note solely to secure receipt of accounts receivable. If she took the note only in lieu of the accounts receivable, the RTC cannot maintain a security interest in this note, since there were no accounts receivable and consequently nothing to which the RTC's lien could attach.

R. Vol. I, # 40 at 4.

The case came to trial on July 14, 1992. Neither party addressed itself to the sanctions issue in any detail. During her closing, the trustee renewed her motion for sanctions. The bankruptcy court only alluded to them in passing.

> The matter will stand submitted. I'll do a written opinion on it, and Ms. Jobin, if—and I'm not prejudging this in any way—if I decide that you may be entitled to rule 11 sanctions, I will give you an appropriate time to file any affidavits.... But I don't want that to be any indication that I'm leaning one way or the other on it.

The bankruptcy court entered it's written opinion and order on July 28, 1992. It found all issues for the trustee. Specifically, it said:

> The evidence at trial was clear that the Trustee did not know of the pre-petition diversions at the time she took the note from Mr. Joseph. The security agreement for the November 1990 note was signed by Mr. Joseph on January of 1991, and it was not until late summer/early fall of that year that the trustee learned of the pre-petition diversions. The consideration for the note was the

trustee's forbearance in not immediately proceeding against Mr. Joseph for his failure to turn over cashier's checks that were allegedly collections on what turned out to be non-existent accounts receivable.

R. Vol. I, # 47. In the same order, the bankruptcy court imposed sanctions against B & H for all actions after its February 27, 1992 order granting partial summary judgment. It stated that:

> [T]he only remaining issues to be determined after that date clearly could have been resolved with one simple phone call, since the key issue was when the Trustee learned of the pre-petition diversions. The Court finds that sanctions against Plaintiff's attorneys are warranted in the amount of the Trustee's costs in continuing to defend this action after February 27, 1992.

*Id.* The bankruptcy court went on to give the trustee ten days within which to submit a bill of costs and B & H ten days thereafter within which to object.

The trustee filed a bill of costs on July 31, 1992. It included a request for attorney fees. The RTC filed its notice of appeal and an objection to the trustee's bill of costs on August 7, 1992. This court docketed the notice of appeal on August 10, 1992, sub. num. 92–CV–1555. The trustee responded to the RTC's objections on August 14, 1992. The bankruptcy court denied and overruled RTC's objections to the trustee's bill of costs on August 19, 1992. It asserted that it's intention in using the word "costs" was to include attorney fees. B & H filed its own notice of appeal on August 28, 1992. The judgment on the attorney fees was entered on the docket on September 23, 1992. The second appeal received a different case number, 92–CV–1747. On November 12, 1992, the RTC moved to dismiss its appeal with prejudice. Judge Nottingham signed an order of dismissal on February 13, 1993. To the extent there were any issues remaining in 92–CV–1555, I ordered the two appeals consolidated on April 2, 1993.

## II. Discussion

### A. Jurisdiction

■ B & H claims the bankruptcy court did not have jurisdiction to amend its judgment of July 28, 1992 to include, as costs, the trustee's attorney fees. B & H points out that the trustee never moved to alter or amend the judgment under Fed.R.Bankr. 9023, so as to include attorney fees. It also points out that the bankruptcy court never later sought leave from this court to correct the judgment, pursuant to Fed. R.Bankr. 9024. Thus, since the first notice of appeal was filed in this court on August 10, 1992, the bankruptcy court lost jurisdiction to assess attorney fees against B & H.

The trustee asserts that, pursuant to rule 8002(a), the bankruptcy court retained jurisdiction to assess attorney fees. That rule provides that

A notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order or decree, shall be treated as filed after such entry and on the day thereof.

In the trustee's view, B & H's August 7 objection was tantamount to a motion to alter or amend. It thus suspended the running of the appeal time and caused the bankruptcy court to retain jurisdiction to sort out what "costs" might be assessed against B & H.

There is scant law to suggest that an objection to a bill of costs should be treated as a motion to alter or amend the judgment. The eleventh circuit has addressed, however, a similar issue in the context of a so-called motion for rehearing, *In re Mike*, 796 F.2d 382 (11th Cir.1986). There, the bankruptcy court dismissed the debtor's petition on September 7, 1984. The debtor filed a "motion for rehearing" on September 14, which the court denied in an order filed October 11. The debtor filed his notice of appeal on October 5. The district court dismissed the appeal because the motion for rehearing did not toll the ten-day limit. The eleventh circuit reversed. It treated the motion for rehearing as a motion for a new trial under rule 9023. It found such a treatment consistent with a

number of policy reasons articulated by the Supreme Court. 796 F.2d at 384.

I agree with the eleventh circuit's reasoning. B & H's slavish interpretation of rules in this case would lead to an absurd result: the bankruptcy court could never modify its judgment of costs once the adverse party filed its notice of appeal. Such a position turns the administration of justice into a race that goes only to the swift.

### B. Notice and Opportunity To Be Heard

■ Due process requires that a party or law firm receive notice of and an opportunity to respond to a request for sanctions. *G.J.B. & Associates, Inc. v. Singleton*, 913 F.2d 824 (10th Cir.1990); *Donaldson v. Clark*, 819 F.2d 1551, 1559–60 (11th Cir.1987) (en banc). The exact contents of the notice and the extent of the opportunity to respond turn on "the circumstances of the situation and the severity of the sanctions under consideration." Fed.R.Civ.P. Rule 11 advisory committee notes. *Braley v. Campbell*, 832 F.2d 1504, 1515 (10th Cir.1987).

■ Notice should include both identification of the papers or pleadings that assertedly violate rule 11, and the fact that the court, itself, is considering imposing sanctions. As the circuit put it in *Braley v. Campbell*, "[t]he basic requirements of due process with respect to the assessment of costs, expenses, or attorney fees are notice that such sanctions are being considered by the court and a subsequent opportunity to respond." 832 F.2d at 1514.

■ The trustee argues that B & H had ample notice because she repeatedly asked for sanctions, both pre-trial and during trial. B & H's failure to address sanctions at the trial or in post-trial pleading, she claims, amounts to a waiver of the right to notice and hearing. I disagree. A party's motion or claim for sanctions may provide some notice that rule 11 sanctions are at issue. It does not, however, give the target any clue that the court is considering sanctions. Without that piece of information, a target of sanctions has not received sufficient notice under the due process clause.

Here, the bankruptcy court suggested attorney fees only in passing. It never told the RTC or B & H that it was considering imposing sanctions or why. Nor did its later written order provide any greater clarity. It never pointed to a specific document or pleading as the basis for sanctions. The order of July 28, 1992 awarded as sanctions the trustee's costs, without any mention of attorney fees. Not until August 19, 1992 did the RTC & B & H learn that the court had intended "costs" to include attorney fees. Such a procedure does not comport with due process.

█ Nor did the bankruptcy court give B & H an adequate opportunity to be heard on the appropriateness of sanctions. In it's July 28, 1992 order it specifically found that the RTC had not violated rule 11 during the time period from the filing of the adversary proceeding to February 27, 1992, the date it granted partial summary judgment. Thus, sanctions were apparently imposed because the RTC did not accept the trustee's word that she did not know of the pre-petition diversions at the time she took the Joseph note. B & H, however, was never able to argue in a **sanctions hearing** that its position was reasonable in light of certain admissions the trustee had allegedly made in an earlier deposition. The bankruptcy court's orders never address this issue.

I am reluctant to encourage satellite litigation around rule 11 sanctions. I do not, by this opinion, suggest that there must be a plenary evidentiary hearing after remand. Due process, however, requires adequate notice and a fair opportunity to respond. B & H received neither in this case.