In re The **CHISHOLM COMPANY,**
a Colorado corporation, Debtor.

Howard B. **GELT** and Gregory L.
**Bamford, Appellants/Cross-**
Appellees,

v.

Mildred **JANOWITZ, individually and as**
**personal representative for Jack Janow-**
itz, Appellee/Cross-Appellant.

Civ. A. No. 93–K–860.
Bankruptcy No. 89 B 09124 D.

United States District Court,
D. Colorado.

April 13, 1994.

Harold Haddon, Haddon, Morgan & Foreman, Craig Christensen, Lindquist, Vennum & Christensen, Arthur Lindquist–Kleissler, Denver, CO, for appellants/cross-appellees.

John B. Wasserman, Katch, Sender & Wasserman, Matthew Skeen, Skeen & Pearlman, Denver, CO, for appellee/cross-appellant.

## MEMORANDUM DECISION
## ON APPEAL

KANE, Senior District Judge.

Gregory L. Bamford and Howard B. Gelt appeal from the bankruptcy court's October 29, 1991 order finding that they were subject to sanctions under Bankruptcy Rule 9011 and 28 U.S.C. § 1927 and its April 7, 1993 order assessing sanctions against them jointly and severally in the amount of $162,987.52. Bamford, president of the Debtor, The Chisholm Company, argues: (1) he was denied due process because he did not receive notice that the court contemplated the entry of sanctions against him individually, nor was he afforded an adequate opportunity to defend himself against the entry of sanctions, (2) he is not a proper party to be sanctioned under Fed.R.Civ.P. 11 or its bankruptcy counterpart, Bankr.R. 9011, because he is not a represented party or an attorney, (3) there was insufficient evidence to find that he was the alter ego of the Debtor, (4) his conduct in causing the Debtor to file for bankruptcy was

not in bad faith, and (5) the amount of sanctions imposed against him was excessive.

Gelt's arguments in support of his appeal are similar. Gelt, one of the attorneys representing the Debtor in this bankruptcy case, contends: (1) he was denied due process because he did not receive adequate notice that sanctions would be imposed against him personally and did not have a meaningful opportunity to contest them, (2) he cannot be sanctioned under Rule 11 for bad faith filing because he did not sign the bankruptcy petition and, regardless, the petition was filed in good faith, (3) his actions did not multiply the proceedings or cause excessive costs in violation of § 1927, and (4) the amount of sanctions was excessive.

Mildred and Jack Janowitz [1] cross-appeal from the same orders, contending that the bankruptcy court erred in not imposing sanctions against the Debtor as well as Bamford and Gelt. The Trustee for the Debtor, Janice A. Steinle, has filed a brief supporting the imposition of sanctions against Bamford and Gelt but opposing the entry of sanctions against the Debtor. I reverse the bankruptcy court's orders imposing sanctions against Bamford and Gelt and affirm the denial of sanctions against the Debtor.

## I. *Facts.*

This bankruptcy appeal emanates from a real estate transaction between the Debtor and the Janowitzes that occurred in May of 1984 and a contest over the ownership of certain water rights related to property sold in that transaction.

The Debtor, a Colorado corporation, purchased a large parcel of real property from the Janowitzes which it intended to subdivide and develop into a high-end residential community. The purchase price for the property, 1,120 acres in total, was $1,160,000. The Janowitzes accepted a $200,000 cash downpayment and a promissory note for $960,000. Under the nonrecourse note, the Debtor was to make five annual payments of $192,000, plus interest at an annual rate of nine percent. The note was secured by a first deed of trust on the property. In the years following this transaction, the Debtor failed to make the full payments under the note. It made a partial payment of principal in 1985, plus additional partial interest payments, but did not make regular payments thereafter.

In June 1985, the Debtor sought legal advice as to the value of certain water rights in aquifers underlying the property. The Debtor contacted Michael D. Shimmin, an attorney specializing in water law, to determine whether these rights were valuable and could be adjudicated. Shimmin advised the Debtor to form a separate entity to adjudicate and further develop the rights. Since the Debtor had subdivided the property acquired from the Janowitzes and was selling individual lots, Shimmin believed that a separate reservation of the water rights for each lot would be difficult to negotiate from potential purchasers. Based on Shimmin's advice, the Debtor formed the Point South Partnership. In July 1986, for the consideration of $10.00, it conveyed to Point South its interest in the water rights, authorized Point South to withdraw, appropriate and use the water, and granted Point South an easement for the construction of the necessary infrastructure to use the water. The Debtor recorded the quitclaim deed and easement in the real property records of the counties in which the property was located.

In December 1986, Point South filed three separate applications for the adjudication of its water rights in state water court. The applications stated that the water rights were being adjudicated by an entity other than the landowner with the consent of the landowner. Notice of the applications was published by the water court pursuant to statute. The Janowitzes, however, as holders of the trust deed on the property, were not given notice of the applications. On November 4, 1988, based upon the recommendation of the water referee, the water court granted Point South's request to use the nontributary groundwater from the aquifers.

Shortly thereafter, on November 19, 1988, the Janowitzes initiated foreclosure proceedings against the Debtor for failing to make its payments under the note. The Debtor

1. After this appeal was filed, Mr. Janowitz died. Mrs. Janowitz, in her capacity as personal representative of Jack Janowitz, has been substituted for him.

attempted to negotiate a settlement with the Janowitzes, in which it offered to grant them additional security in the water rights adjudicated by Point South. The Janowitzes rejected this offer.

On February 14, 1989, the Debtor filed for bankruptcy under Chapter 11 of the Bankruptcy Code. Bamford signed the petition in his capacity as president of the Debtor. One day later, the bankruptcy court approved the law firm of Berenbaum & Weinshienk, of which Gelt was then a member, to act as the Debtor's bankruptcy counsel. Gelt began his participation in the matter on February 16, 1989.

On July 7, 1989, the Janowitzes moved for relief from the stay to proceed with foreclosure of the property. The Debtor objected to this motion, contending that it had equity in the property. Following an evidentiary hearing, the bankruptcy court, Judge Brooks presiding, granted the motion. In his October 23, 1989 ruling, the Judge Brooks found that the Debtor had no equity in the property and that a successful reorganization was not likely. He based this conclusion on appraisals of the property, the substantial debt outstanding to the Janowitzes and the amount of unpaid taxes accruing on the property. In addition, he noted:

> Although not necessarily a determinative issue, the Court does note some concern over the "water transactions" that have occurred in this case between the Debtor and a Colorado partnership, Point South. The Point South partnership is composed of the identical individuals and entities who originally formed the Debtor. Within approximately one year after the Debtor defaulted in its payment obligations to the Applicants, the Debtor entered into transactions of a questionable nature. This Court does not make a specific finding as to whether or not said transactions were legal. The Court simply notes that under the totality of the circumstances said transactions are curious and questionable in that they involved insiders; occurred for virtually no consideration; and that subsequent thereto the Debtor and not Point South continued to pay for all costs and expenses associated with the water rights.

> Furthermore, there was unrebutted testimony that Applicants [the Janowitzes], as holders of the First Deed of Trust on the subject property, were never told or informed of these transactions. By the Debtor's own testimony these water rights have a gross value of $1,000,000.00 to $2,000,000.00. The Court notes that any time prior to trial on relief from stay, Point South could have returned these water rights to the Debtor to greatly assist the Debtor, perhaps decisively, in its reorganization efforts and defeating the relief from stay motion, but the principals elected not to do this. The principals elected to keep these valuable assets independent and separate from the reorganizing estate.

(R.Doc. 98 at 6–7.)

Based on the bankruptcy court's suggestion that the Debtor's ownership of the water rights would have prevented it from granting relief from the stay, the Debtor obtained a reconveyance of the water rights from Point South. On October 20, 1989, it moved for reconsideration of the court's order granting relief from the stay. Ten days later, the Debtor also commenced an adversary proceeding seeking a determination that the Janowitzes' deed of trust did not encumber the water rights and that they were property of the estate. In addition, it obtained a temporary restraining order from the bankruptcy court preventing the Janowitzes from taking title to the water rights after foreclosure of the property until there was a determination whether the deed of trust covered them.

On January 19, 1990, the Janowitzes filed a motion urging the court to abstain from hearing the adversary proceeding and to permit the state water court to consider whether the Debtor and Point South's adjudication of the water rights was procedurally valid, even though the Janowitzes were not given notice of the applications. On the bankruptcy court's recommendation, the district court granted the motion to abstain. (As of the time the parties argued this appeal, the state court had not ruled on the validity of Point South's adjudication of the water rights.)

On January 19, 1990, the Janowitzes moved for the appointment of a Chapter 11 trustee. The bankruptcy case was then

transferred from Judge Brooks to Judge Cordova, and Judge Cordova granted the motion. On September 7, 1990, the Trustee moved to convert the case to Chapter 7, on the grounds that there was little chance of a successful reorganization given the foreclosure of the property and few additional assets.

Responding to the Trustee's motion, the Janowitzes made their first request for the entry of sanctions against the Debtor and other "appropriate parties." (R.Doc. 194 at 7.) At the hearing on the conversion motion, Judge Cordova advised the Janowitzes to move for a hearing on their request to allow the Debtor an opportunity to respond. (*See* Tr.Supp. Vol. VII at 40). They did so on November 21, 1990, again requesting sanctions against the Debtor and "appropriate parties." (R.Doc. 209 at 4.)

In early February 1991, the court heard argument on the motion for attorney fees and sanctions. On October 29, 1991, Judge Cordova entered extensive findings and conclusions on the motion. He ruled that both Bamford, as the Debtor's alter ego, and Gelt, as the Debtor's attorney, were subject to sanctions under Bankruptcy Rule 9011 and 28 U.S.C. § 1927. He later clarified that Bamford was not subject to sanctions under § 1927, since he is not an attorney. In addition, Judge Cordova held that the amount of sanctions would be determined upon the Janowitzes' filing of a fee application. Finally, he expressly prohibited Bamford or Gelt from contesting whether sanctions should have been imposed in their responses to the fee application.

On June 23, 1992, Judge Cordova heard argument on the fee application, departing from his earlier ruling that the parties would be permitted to introduce evidence and examine witnesses at the hearing. In an April 12, 1993 order, he then assessed sanctions jointly and severally against Bamford and Gelt in the amount of $162,987.52.

## II. *Merits.*

### A. *Jurisdiction to Review Sanction Orders.*

■ I must first determine whether I have jurisdiction under 28 U.S.C. § 158(a) to review the sanction orders appealed in this case. That statute limits a district court's review to "final judgments, orders, and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Relying on *Dodd Insurance Services, Inc. v. Royal Insurance Co. of America*, 935 F.2d 1152, 1154 n. 1 (10th Cir.1991), the Janowitzes contend that I have no jurisdiction over this appeal because the sanction orders are not final. They maintain that parties and their attorneys sanctioned during litigation "must bear the burden of sanctions to the conclusion of the case and appeal on the merits of a fully adjudicated case." (Appellees' Opening Br. at 1.)

While the reasoning in *Dodd* applies to parties and their attorneys, here Bamford, neither a party nor an attorney, was sanctioned by the bankruptcy court. When sanctions are imposed on a nonparty to pay attorney fees and costs, many courts apply the collateral order exception to the finality rule and hold that the sanction order is appealable. *See, e.g., Riverhead Sav. Bank v. National Mortgage Equity Corp.*, 893 F.2d 1109, 1113–14 (9th Cir.1990). I do so here and conclude that Bamford may appeal as of right.

■ The same rule does not apply to Gelt, who does not brief the jurisdictional question. In *G.J.B. & Associates, Inc. v. Singleton*, 913 F.2d 824, 829 (10th Cir.1990), the Tenth Circuit aligned itself with the First, Third and Fifth Circuits to hold that a sanction order against an attorney of record is not appealable under the collateral order exception.[2] Nevertheless, this case is distinguishable from *G.J.B. & Associates, Inc.* First, Gelt states in his brief that he "left Berenbaum and Weinshienk after the sanctions award but before the fee award...." (Gelt's Opening Br. at 24). Some courts allow an appeal

**2.** Contrary to Bamford's assertion, (*see* Bamford's Reply Br. at 1), the court in *G.J.B. & Associates* expressed "no opinion on the appeala-bility of sanctions against a nonparty or an attorney no longer involved in the case." *See* 913 F.2d at 829 n. 6.

under the collateral order exception when an attorney has withdrawn from the case at the time the appeal is filed. *See Oxley v. Watson (In re Watson)*, 884 F.2d 879, 880 n. 2 (5th Cir.1989); *Markwell v. County of Bexar*, 878 F.2d 899, 901 (5th Cir.1989). I am reluctant to hear Gelt's appeal under the collateral order exception, however, based solely on the above-quoted, unsupported contention in his brief. I can find no confirmation in the voluminous record.

Nevertheless, this case is also distinguishable from *G.J.B. & Associates* in that sanctions were imposed jointly and severally against Bamford and Gelt. As I explained above, Bamford is entitled to appeal under the collateral order exception. To dismiss Gelt's appeal for lack of jurisdiction but proceed with Bamford's appeal would be difficult because the alleged sanctionable conduct cannot be easily attributed to one party and not to the other. It would also be inefficient, as the issues raised in the two appeals substantially overlap. "Inefficient use of judicial resources is as objectionable in bankruptcy appeals as in any other field." *In re Jeannette Corp.*, 832 F.2d 43, 46 (3d Cir.1987). Therefore, I treat Gelt's notice of appeal as a motion for leave to appeal and grant him leave to appeal. *See* Bankr.R. 8003(c).

## B. *Standards of Review.*

■ A court's ruling imposing sanctions under Rule 11 or 28 U.S.C. § 1927 is generally reviewed for an abuse of discretion. *See Griffen v. City of Okla. City*, 3 F.3d 336, 342 (10th Cir.1993); *Calder v. Job (In re Calder)*, 973 F.2d 862, 869 (10th Cir.1992); *Dodd*, 935 F.2d at 1155.

> An abuse of discretion occurs when a judicial determination is arbitrary, capricious, or whimsical. It is not merely an error of law or of judgment, but an overriding of the law by the exercise of manifestly unreasonable judgment or the result of impartiality [sic], prejudice, bias or ill-will as shown by evidence or the record of proceedings.

*United States v. Wright*, 826 F.2d 938, 943 (1987); *see also Troy Davis Homes, Inc. v. American Continental (In re Troy Davis Homes, Inc.)*, 113 B.R. 699, 703–04 (D.Colo. 1990).

■ While the ultimate decision to award a sanction is reviewed for an abuse of discretion, the bankruptcy court's underlying factual findings leading to that conclusion are reviewed for clear error, and its legal conclusions are reviewed *de novo*. *See Kusic v. Mathis (In re Yellow Cab Cooperative Ass'n)*, 144 B.R. 505, 508 (D.Colo.1992); *see generally Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1536 (10th Cir.1990). A factual finding is clearly erroneous "if it is without factual support in the record or if, after reviewing all of the evidence, [the reviewing court] is left with the definite and firm conviction that a mistake has been made." *In re Davidovich*, 901 F.2d at 1536.

## C. *Gregory L. Bamford's Appeal.*

### 1. *Is Bamford Subject to Rule 11 Sanctions?*

■ Judge Cordova imposed sanctions against Bamford for violating the strictures of Bankruptcy Rule 9011. That rule permits an award of sanctions against a person who signs a pleading in violation of the rule, the represented party, or both. Bankr.R. 9011(a). As explained in the advisory committee note to the rule, this means that the court has discretion to impose sanctions "on either the attorney, the party the signing attorney represents, or both." Bamford executed the petition and other pleadings in this case in his capacity as president of the Debtor. Therefore, he contends that since he is neither the represented party (the Debtor), nor the Debtor's attorney, he cannot be held liable under the plain language of the rule. Because this issue is determinative of his appeal, I address it first.

There is conflicting authority whether the officer of a corporation who signs a pleading in his official capacity may be held liable personally for Rule 9011 sanctions. Bamford relies on two cases to support his position that he is not subject to sanctions: *Caldwell v. Farris (In re Rainbow Magazine, Inc.)*, 136 B.R. 545 (9th Cir. BAP 1992), and *Business Guides, Inc. v. Chromatic Communica-*

*tions Enterprises, Inc.,* 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

In *Rainbow Magazine,* the bankruptcy court assessed sanctions jointly and severally against a corporate debtor and the debtor's chief executive officer for filing a bad faith Chapter 11 bankruptcy petition. Both parties appealed. The appellate panel affirmed the sanctions as to the debtor, but reversed in part as to the corporate officer. First, it noted that the plain language of Rule 9011 "does not contemplate sanctions against a person who is neither a person who signed the offending pleading nor a party." 136 B.R. at 552. This conclusion, it reasoned, was compelled by the Supreme Court's view, expressed in *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), that "the reach of Rule 11 should not extend beyond its plain language," even where a broader interpretation might better serve the purposes of the rule. *Id.* at 553. Thus, because the officer was neither a party nor the individual who signed the petition in violation of Rule 11, sanctions against him based on the petition were improper. *Id.* The panel further declined to justify the sanctions based on the bankruptcy court's inherent sanctioning power. *Id.*

The *Rainbow* court acknowledged that other courts had authorized the imposition of sanctions against the principal of a corporate party where that officer had personally participated in the sanctionable conduct, *id.* (citing *In re Memorial Estates, Inc.,* 116 B.R. 108 (N.D.Ill.1990); *Midwest Properties No. Two v. Big Hill Inv. Co.,* 93 B.R. 357 (N.D.Tex.1988)), but rejected these cases as failing to "address the conflict between the result and the plain language of the rule," *id.* Curiously, the panel went on to hold that the corporate officer could be held personally liable under Rule 9011 for sanctions in connection with documents he did sign in his capacity as chief executive officer, such as a statement of affairs, and remanded the case to the bankruptcy court for a determination of the amount of sanctions attributable to this improper pleading. *Id.* at 554.

As Bamford notes, the latter holding is questionable given the *Rainbow* panel's rejection of *Memorial Estates* and *Midwest Properties* for ignoring the plain language of Rule 9011. Furthermore, Bamford contends that both these cases were decided before the Supreme Court's decision in *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.* In that case, the Supreme Court upheld the imposition of sanctions against a corporation and its attorneys for filing a motion for a temporary restraining order that was without factual basis. 498 U.S. at 554, 111 S.Ct. at 934–35. Notably, the motion was signed by an attorney and by the corporation's president on behalf of the corporation. *Id.* at 536, 111 S.Ct. at 925. Reacting to the dissent's criticism that the signature of the president should not have been treated as the corporation's signature, the Court explained:

> Justice Kennedy suggests that this is "in square conflict" with our holding in *Pavelic & LeFlore* that " 'the person who signed' " was the individual attorney, not the law firm. The dissent overlooks an important distinction. In *Pavelic & LeFlore,* we relied in part on Rule 11's unambiguous statement that papers must be signed by an attorney "in the attorney's individual name." A corporate entity, of course, cannot itself sign anything; it can act only through its agents. It would be anomalous to determine that an individual who is represented by counsel falls within the scope of Rule 11, but that a corporate client does not because it cannot itself sign a document. In any event, the question need not be resolved definitely [sic] here; Business Guides concedes that it did not raise this argument in the courts below.

*Id.* at 547–48, 111 S.Ct. at 931 (citations omitted).

*Business Guides* and other case law persuades me that the sanctions in this case, if appropriate at all, must fall on the Debtor and not on Bamford. *See Leventhal v. New Valley Corp.,* 148 F.R.D. 109, 111–12 (S.D.N.Y.1993) (corporate vice president/general counsel not liable personally for sanctions under Rule 11; corporate office is sufficient to visit liability on the corporation but not on the officer individually); *Paine-Webber, Inc. v. Can Am Fin. Group Ltd.,* 121

F.R.D. 324, 335–36 (N.D.Ill.1988) (corporation, not its president, held liable under Rule 11 for president's lies to attorneys leading to filing of improper pleading), *aff'd*, 885 F.2d 873 (7th Cir.1989). *But see Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77, 83 n. 7 (E.D.Pa.1992) (Rule 11 permits a court "to sanction the individual who signed a paper on behalf of a corporation as well as the corporation itself"), *aff'd*, 998 F.2d 1004 (3d Cir. 1993). I conclude that the bankruptcy court erred as a matter of law in sanctioning Bamford under Rule 9011 because he did not sign the pleadings in his individual capacity.[3]

### 2. *Can Bamford Be Sanctioned as the Debtor's Alter Ego?*

■ A second basis upon which the bankruptcy court apparently entered sanctions against Bamford individually was its finding that Bamford was the Debtor's alter ego. This conclusion is erroneous both as a matter of law and of fact.

In *Rainbow Magazine*, the appellate panel reversed the bankruptcy court's imposition of sanctions against the corporation's principal based on his signing the corporation's bad faith bankruptcy petition. The panel went on to identify a second basis, the doctrine of alter ego, under which a principal of a corporation might be liable for the sanctions:

> [I]n determining that neither Rule 9011 nor the bankruptcy court's inherent power provide a basis for upholding the bankruptcy court's imposition of sanctions against Caldwell, we do not hold that Caldwell is immune from any sanction award. We express no opinion as to whether [the creditor] could, in an appropriate action, enforce the debtor's corporate liability for sanctions against Caldwell under any applicable state law that would allow a creditor to pursue a corporate officer or principal to recover debts of the corporation.

136 B.R. at 554.

Assuming that a corporate principal may be held liable under alter ego theory for Rule

11 sanctions, a necessary predicate to holding Bamford liable in this case is that sanctions must first have been imposed against the Debtor and constitute a debt of the Debtor. That did not occur. In the sanctions order, Judge Cordova stated:

> The Court finds that sanctions should be imposed against Gregory L. Bamford and Howard Gelt on an equal basis. Gregory L. Bamford was acting as the alter ego of the Debtor and should be personally liable for any sanctions imposed against the Debtor. The Court is satisfied that Gregory L. Bamford and Howard B. Gelt are equally culpable for the multiple violations set out in this opinion. They acted in concert in the filing and maintaining of this action and should be held equally accountable.

(R.Doc. 276 at 29.) Sanctions were not imposed against the Debtor however, and, as a consequence, the Janowitzes have cross-appealed. Therefore, the bankruptcy court missed a necessary first step in sanctioning Bamford individually as the Debtor's alter ego but not holding the Debtor itself liable for sanctions.

■ Furthermore, the record does not support the bankruptcy court's finding that Bamford was the Debtor's alter ego. In his opinion, Judge Cordova focused on the connection between the Debtor and Point South. He noted that no distinction between these entities had been made to Mr. Shimmin, who provided legal advice on the adjudication of the water rights, leading the judge to reject the attorney-client privilege as to these entities. In addition, the minutes of the Debtor discussed the water rights adjudication as if that was an activity of the Debtor and not Point South. Judge Cordova also cited the fact that Point South's address was the same as that of the Debtor and relied upon evidence that the transfer of the water rights between these entities lacked consideration.

---

**3.** I express no opinion whether the bankruptcy court could have sanctioned Bamford individually pursuant to its inherent powers, in accord with the Supreme Court's decision in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (upholding sanctions against

individual litigant for his actions in several fora, where Rule 11 and § 1927 were not "up to the task"). The court below did not employ this rationale, nor do the circumstances of this case indicate that it would have been appropriate.

While the foregoing might support the conclusion that the Debtor and Point South were alter egos, it does not support a finding that Bamford was the Debtor's alter ego. Under Colorado law, to pierce the corporate veil, a creditor must show "manifest abuse of the corporate form or intent to use the corporation as a shield for fraud." *Walk–In Medical Ctrs., Inc. v. Breuer Capital Corp.,* 778 F.Supp. 1116, 1123 (D.Colo. 1991). There must be evidence that "an individual consistently disregarded the formalities of the corporate form and so dominated the affairs of the corporation ... that to continue to acknowledge the legal fiction of the corporation would promote injustice and harm public convenience." *Geringer v. Wildhorn Ranch, Inc.,* 706 F.Supp. 1442, 1445 (D.Colo.1988).

Such evidence may include, among other things, the commingling of funds and other assets, failure to maintain complete corporate records, overlapping ownership and control of an entity, personal use of corporate funds and disregard of corporate formalities. *See Skidmore, Owings & Merrill v. Canada Life Assurance Co.,* 907 F.2d 1026, 1027 (10th Cir.1990) (listing factors supporting application of alter ego doctrine); *Newport Steel Corp. v. Thompson,* 757 F.Supp. 1152, 1157 (D.Colo.1990) (same). Yet the mere fact that an individual is the sole shareholder of a corporation and exercises some degree of control over it is insufficient to support piercing the corporate veil. *See Lowell Staats Mining Co. v. Pioneer Uravan, Inc.,* 878 F.2d 1259, 1263 (10th Cir. 1989); *United States v. Van Diviner,* 822 F.2d 960, 965 (10th Cir.1987).

It is undisputed that 96.15 percent of the outstanding stock of the Debtor was held by the Bamford Land Company and that Bamford was the president of both entities and owned stock in both. This shows, however, only that the two companies were closely held. The record is devoid of evidence that Bamford used the assets of the Debtor, the Bamford Land Company, or Point South for his own personal benefit or to effect a fraud on creditors. Such a finding is crucial to support the piercing of the corporate veil. "Personal liability for a corporation's debts cannot be imposed on an individual merely because he is an officer or shareholder of that corporation." *Van Diviner,* 822 F.2d at 963. Therefore, I conclude that the bankruptcy court erred in holding Bamford personally liable for the Debtor's allegedly sanctionable conduct as its alter ego.

### 3. Did Bamford Receive Adequate Notice and an Opportunity to be Heard?

In addition, assuming none of the preceding errors occurred and that Bamford could properly be held personally liable for sanctions, the bankruptcy court failed to ensure that Bamford had adequate notice of and an opportunity to be heard on the imposition of such sanctions. In *Braley v. Campbell,* the Tenth Circuit recognized the "venerable principal of law" that a court's power may not be exercised " 'without notice to the offending party of the grounds of complaint against him, and affording him ample opportunity of explanation and defense.' " 832 F.2d 1504, 1514 (10th Cir.1987) (citing *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 354–55, 20 L.Ed. 646 (1871)). This basic principle applies to sanction awards under Rule 11 and requires that the attorney or offending party be given "notice that such sanctions are being considered by the court and a subsequent opportunity to respond." *Id.; see also Baker & Hostetler v. Jobin (In re M & L Business Machines Co.),* 153 B.R. 312, 315 (D.Colo. 1993). In both areas, the proceedings before the bankruptcy court were deficient.

Before the first hearing on sanctions was conducted, the Janowitzes had twice requested that sanctions be assessed only against the Debtor and other "appropriate parties," without specifying who those parties were. Bamford was not mentioned by name in the first pleading. He was named in the second pleading only in connection with water court proceedings and as a potential witness, but not as a target of the sanctions. He had no indication that he would be held personally liable until the bankruptcy court entered its findings of facts and conclusions of law on October 29, 1991 and imposed the sanction. In this order, the bankruptcy court made clear that it would not reconsider the issue of the propriety of its ruling when it later ad-

dressed the amount of sanctions to be assessed. Thus, Bamford was precluded from effectively challenging the court's imposition of sanctions against him personally. *See Braley*, 832 F.2d at 1514; *Endrex Investments, Inc. v. Mauna Lani Resort, Inc. (In re Endrex Invs., Inc.)*, 111 B.R. 939, 944 (D.Colo.1990) (notice and hearing on sanctions inadequate where attorney was not advised before imposition that sanctions were contemplated and was precluded from contesting merits of award in subsequent hearing).

### 4. *Did Bamford Violate the Standards of Rule 9011?*

Bamford further argues that, even if he is subject to sanctions under Rule 9011 and no procedural error occurred, his filing of the petition was not a violation of that rule. Judge Cordova focused primarily on two reasons why Bamford's conduct in this case was improper. The first was that the bankruptcy was filed in bad faith in that this was primarily a single-asset reorganization with little hope of success. The second concerned the allegedly improper water rights transactions between the Debtor and Point South. Reviewing the record in this case, neither reason supports the imposition of sanctions under Rule 9011.

In *Toibb v. Radloff*, the Supreme Court reversed an Eighth Circuit decision holding that an individual debtor not engaged in business could not reorganize under Chapter 11. *See* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). Reviewing the text and legislative history of Chapter 11, the Court found no basis for implying a requirement that a debtor must be engaged in an ongoing business to reorganize. *See id.*, 501 U.S. at 166, 111 S.Ct. at 2202. The rationale in *Toibb* suggests that the same conclusion follows for single-asset reorganizations. *See In re Kellogg Square Partnership*, 160 B.R. 343, 353 (Bankr.D.Minn.1993). The Code does not expressly prohibit single-asset debtors from reorganizing, and "the lower federal courts should be wary of imposing a gloss on the eligibility or substantive provisions of the Bankruptcy Code to erect a bar, *per se*, on the invocation of a particular form of bank-

ruptcy relief by a debtor of a particular sort." *Id.*

For example, in *In re Endrex Investments, Inc.*, decided before *Toibb*, I reversed a sanction award against an attorney who had opposed a motion for relief from the stay, on the grounds that it was not objectively unreasonable for that attorney to have thought reorganization based on a single asset would be feasible. *See* 111 B.R. at 946. Moreover, Judge Brooks tacitly acknowledged that single-asset reorganizations are not *per se* improper when, in his earlier opinion in this case granting the Janowitzes' motion for relief from the stay, he characterized the case as a "typical single asset reorganization." (R.Doc. 98 at 4.) Consequently, the fact that the Debtor's sole asset of value was the property acquired from the Janowitzes does not lead inexorably to the conclusion that the petition was filed in bad faith or that the Debtor, or its principal, should be sanctioned.

In addition, at the time the petition was filed, it was not clear that the reorganization had no chance of succeeding. There was at least some evidence that the Debtor had equity in the property and was actively seeking restructured financing which could possibly have permitted an effective reorganization. Moreover, in many cases, the debtor and its counsel simply require additional time to evaluate whether a viable plan can be formulated, to investigate options for financing, and to determine the best course of action. The purpose of the automatic stay in bankruptcy is to give the debtor this needed "breathing space" from its creditors so it can sort out a possible course of action and assess whether reorganization would be feasible. *In re Park Place Assocs.*, 118 B.R. 613, 617 (Bankr.N.D.Ill.1990). That the filing occurs on the eve of foreclosure is not determinative. *Id.* at 618.

Furthermore, courts should be wary of automatically concluding that Rule 9011 has been violated based on a finding that a petition has been filed in bad faith. As I noted in *Endrex*, the two standards are different. *See* 111 B.R. at 944. "[D]ismissal of a case on the grounds that it was filed in bad faith does not itself compel imposition of sanctions under Bankruptcy Rule 9011."

*Park Place Assocs.*, 118 B.R. at 618. To a large extent, "even a debtor and its counsel who have conducted a reasonable investigation into the facts and law must to some extent speculate as to future events." *Id.* at 617. Absent some indication at the time of filing that dismissal was "readily foreseeable," the imposition of sanctions for bad faith filing is not appropriate. *Id.* at 618. Dismissal was not foreseeable in this case.

The second factor that lead the bankruptcy court to find that Bamford's actions were improper was the conveyance and reconveyance of water rights between the Debtor and Point South. This is the heart of the dispute between the Janowitzes and the Debtor. The bankruptcy court placed great emphasis on what it interpreted as evidence that the Debtor tried to conceal this asset from the Janowitzes and the court and attempted "to deprive the Janowitz [sic] of the water rights that had been secreted to Point South." (R.Doc. 276 at 22.)

The record shows, however, that the Debtor and Point South initially acted on the advice of their water law attorney, Mr. Shimmin, in setting up Point South and conveying the unadjudicated water rights to it. Further, it is difficult to see how the bankruptcy court could have concluded that the existence of these rights was concealed from the Janowitzes when they were offered to the couple as a pre-bankruptcy inducement to refrain from proceeding with the foreclosure of the property.[4] Likewise, since they were titled in Point South's name at the time the Debtor filed its petition, they were not listed among the Debtor's assets. Finally, the Debtor's reacquisition of the rights was in direct response to Judge Brooks' suggestion that, had they been part of the estate, the Debtor could have prevailed on the Janowitzes' motion for relief from the stay.

This is not to say that the record supports a finding that the Debtor was entirely forthright about the existence and value of the water rights. As Judge Brooks noted, the

transfer of the rights was "curious and questionable." (R.Doc. 98 at 7.) But the bankruptcy court missed one critical point: there has yet to be a determination as to who owns or holds an interest in these rights and their current value. The Debtor was advised, prebankruptcy, that the Janowitzes' deed of trust did not encumber these rights and that, as beneficiaries of the deed of trust on the property, they were not required to receive notice of the water rights adjudication. This may or may not be true, but the issue should be determined by the state water court. The bankruptcy court was premature in assuming that the Janowitzes were "deprived" of any water rights until it is determined that they hold an interest in them.

Likewise, the bankruptcy court focused on alleged discrepancies as to the value of the rights—nominal before the transfer to Point South, but substantial after the adjudication. This simply reflects the inchoate nature of the rights before an adjudication permitting their appropriation. *See State Dept. of Natural Resources v. Southwestern Colo. Water Conservation Dist.*, 671 P.2d 1294, 1316–18 (Colo.1983), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1929, 80 L.Ed.2d 474 (1984) (landowners do not have interest in nontributary ground water coextensive with other interests in real property). *See generally* James J. Petrock, *Use of Colorado Water Rights in Secured Transactions,* 18 Colo.Law. 2307, 2310 (1989) (perfection of nontributary ground water right can occur through state engineer's permitting process or by water court adjudication; "[u]ntil rights to nontributary ground water have been perfected, it is questionable whether they constitute 'property' in which a security interest can be taken.") Accordingly, the uncertainty as to the ownership and value of the water rights was not sufficient to support an award of sanctions against Bamford.

### 5. *Was the Amount of Sanctions Excessive?*

In its April 9, 1993 order awarding sanctions, the bankruptcy court found that

---

4. Interestingly, Judge Cordova stated initially that the Debtor did not disclose the water transactions to the Janowitzes until "[s]hortly after filing the bankruptcy," but later found that "[s]hortly prior to the bankruptcy filing in an

effort to avoid foreclosure," the Debtor proposed to give the couple a security interest in some of the water rights which had been adjudicated by Point South. (*See* R.Doc. 276 at 3, 8.)

Bamford and Gelt should be held equally responsible for all the Janowitzes' attorney fees, commencing with those incurred as of the date the petition was filed and including "the fees incurred by the bankruptcy attorneys and the water rights attorneys [which] were reasonably necessary to further the attorneys' goal of maximizing recovery for their clients." (R.Doc. 335 at 4.) Several aspects of this ruling are erroneous.

 First, following from my analysis above, there was no sanctionable conduct in this case. However, assuming Bamford's actions crossed the line at some point during the proceedings, the bankruptcy court erred in holding Bamford liable for all of the Janowitzes' legal fees during the course of the bankruptcy. Deterrence, rather than compensation, is the primary purpose of any sanction award. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Rule 11 is not a fee-shifting statute. *Business Guides*, 498 U.S. at 553, 111 S.Ct. at 934. Courts are directed to assess sanctions in the minimum amount necessary to deter the undesirable behavior. *White v. General Motors Corp.*, 908 F.2d 675, 684–85 (10th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). Imposing all of the costs the opposing party incurred during the course of litigation is, *ipso facto,* fee-shifting and should be reserved for only the most egregious situations. *Cf. Chambers v. Nasco, Inc.*, 501 U.S. at 56, 111 S.Ct. at 2139 (upholding district court's decision, where litigant had been warned repeatedly about his conduct, that "full attorney's fees were warranted due to the frequency and severity of [the litigant's] abuses and the resulting need to ensure that such abuses were not repeated").

 Second, the court awarded fees that the Janowitzes incurred in state water court proceedings in addition to those generated in bankruptcy court proceedings. Rule 11 governs procedures in the federal courts, and focuses on particular pleadings filed here. It does not apply to papers filed in other fora. *See Cooter & Gell,* 496 U.S. at 406, 110 S.Ct. at 2461; *Griffen,* 3 F.3d at 339. Therefore, the bankruptcy court erred including, as part of its award, fees attributable to proceedings outside its jurisdiction.

### D. *Howard B. Gelt's Appeal.*

#### 1. *Did Gelt Receive Adequate Notice and an Opportunity to be Heard?*

 Gelt first argues that, like Bamford, he had no warning that the bankruptcy court was considering imposing sanctions against him until entry of the court's order. In response, the Janowitzes point to the bankruptcy court's comment, in the November 14, 1990 hearing in which it advised the Janowitzes to file a separate motion on their request for sanctions, that if such a motion were filed, "we'll get it set and provide Mr. Gelt with an opportunity to prepare for a hearing, and we'll have a hearing." (Tr. Supp. Vol. VII at 40.) This statement, they argue, provided adequate notice to Gelt. I disagree.

As noted earlier, the record shows that the Janowitzes moved for sanctions against the Debtor and other "appropriate parties" and yet never mentioned Bamford or Gelt by name in connection with that request. Gelt represented the Debtor. The court's comment in the November 1990 hearing reflects the obvious proposition that Gelt would likely be defending the Debtor at the hearing on sanctions. This was not adequate notice that sanctions would be imposed against Gelt personally. *See G.J.B. & Associates, Inc. v. Singleton,* 913 F.2d at 830; *In re Endrex Invs., Inc.*, 111 B.R. at 944.

 Gelt also questions whether the bankruptcy court erred in relying solely on offers of proof, and not direct testimony, at the sanctions and attorney fee hearings. The record on this issue, at least with respect to the sanctions hearing, is somewhat unclear. The Debtor, through its attorney, Gelt, stated that it was prepared to go forward at the sanctions hearing "on the basis of declarations and oral argument." (*See* R.Doc. 248 at 2.) Nevertheless, at the attorney fee hearing, Gelt and Bamford were prepared to offer live testimony in accordance with the bankruptcy court's earlier procedural order, yet the court declined to hear this evidence, ruling that it went to the

merits of the entry of sanctions and not to the amounts to be assessed. (*See* Tr.Supp. Vol. XI at 19–22).

■■■ A plenary evidentiary hearing is not required on a motion for sanctions. *See Braley*, 832 F.2d at 1515 ("Even at the trial court level, the sanction inquiry may properly be limited to the record in most instances.") Since a motion for sanctions is a contested matter, *see Midwest Properties No. Two v. Big Hill Inv. Co.*, 93 B.R. 357, 360 (N.D.Tex. 1988), the more abbreviated procedures for taking testimony under Fed.R.Civ.P. 43 apply, *see In re Mohring*, 142 B.R. 389, 392 n. 6 (Bankr.E.D.Cal.1992), *aff'd*, 153 B.R. 601 (9th Cir. BAP 1993). Under this rule, the court may hear a motion based solely on affidavits or it may direct that the motion be heard on oral or deposition testimony. Fed.R.Civ.P. 43(e). Nevertheless, the court below, in indicating at the sanctions hearing that it would address which pleadings violated Rule 11 and § 1927 at the later attorney fee hearing, (Tr.Supp. Vol. VIII at 111), but later rejecting this evidence, (*Id.* Vol. XI at 20–22), denied Gelt a full and fair opportunity to be heard on the extent of his responsibility for the allegedly violative pleadings and excessive costs. *See In re M & L Business Machines Co.*, 153 B.R. at 315–16.

### 2. *Did Gelt Violate Rule 11?*

■■■ Gelt next asserts that the bankruptcy court erred in holding him liable under Bankr.R. 9011 because he did not sign the pleadings in violation of that rule. That bankruptcy court's order identifies four documents which Gelt signed: a September 27, 1989 disclosure statement, the October 20, 1989 motion for reconsideration of the order granting relief from the stay, a December 18, 1989 motion for temporary restraining order and preliminary injunction, and the Debtor's response to the Trustee's motion to convert the case to Chapter 7. Notably, Gelt did not sign the Debtor's bankruptcy petition and was not active in the case until after it had been filed.

Here, the central reason the bankruptcy court imposed sanctions under Bankruptcy Rule 9011 was that it found that the petition had been filed in bad faith.[5] While I have already concluded that the record does not support this finding, the bankruptcy court further erred by holding Gelt responsible for the filing when he had not prepared or signed the petition or otherwise taken active steps in representing the Debtor at the time. There is some indication that the bankruptcy court viewed Rule 11 as imposing a continuous duty on Gelt to reevaluate the propriety of the petition in continuing to pursue reorganization, even though he did not sign the petition. At the time of Gelt's participation in this case, however, Rule 11 did not impose a continuing duty to reevaluate pleadings. *See Griffen*, 3 F.3d at 339 (Rule 11 sanctions not applicable to "failure to amend or withdraw a previously filed document"); *In re Endrex Invs., Inc.*, 111 B.R. at 946.[6]

■■■ In addition to the petition, however, the court also ruled that

> other Rule 9011 violations occurred during the conduct of the case, including the Disclosure Statements, the Motion for Reconsideration of Order for Relief, Motion to

---

5. For example, the bankruptcy court stated: "The threshold issue is whether the initial filing of the Chapter 11 petition in this case was in bad faith. This court finds that this case was filed in bad faith." (R.Doc. 276 at 21.) It went on to find that "a reasonable attorney would not have filed the within petition. Objectively, the filing of the within petition was unreasonable under the circumstances of this case." (*Id.* at 23.) Finally, it reasoned:

> The Court notes parenthetically, that counsel for the Debtor argues that Bankruptcy Rule 9011 sanctions are not applicable to the bankruptcy lists, statements, and schedules. The delineated exceptions stated in Bankruptcy Rule 9011 do not, however, apply to the peti-

tion itself.... The petition filed in this case, paragraph 3, contains the representation to the Court that, "Petitioner is qualified to file this petition and is entitled to the benefits of Title 11, United States Code as a voluntary Debtor." (*Id.* at 26.)

6. The same cannot be said after enactment of the 1993 amendment of Rule 11. As the advisory committee note to the amendment states: "[A] litigant's obligations with respect to these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings after learning that they cease to have any merit."

Abandon, and the Debtor's Responses to Janowitz' Reply Re: Motion to Convert and Request for Hearing. This Court believes that all of these post-petition actions by Debtor's counsel are sanctionable under Bankruptcy Rule 9011.

(R.Doc. 276 at 25.) Beyond this conclusory statement, however, the court never specifies how these documents fall below the standards of Rule 11. Absent some further explanation of its reasoning, sanctions relating to these filings cannot stand. *See Griffen,* 3 F.3d at 340; *Braley,* 832 F.2d at 1513 (court must "sufficiently express the basis for the sanctions imposed to identify the excess costs reasonably incurred by the party to whom they will be due").

■ Finally, the court referenced a number of pre-petition events involving the Debtor and "its counsel" in which Gelt, and in some cases his former firm, could not conceivably have participated. (*See* R.Doc. 276 at 27). In essence, the court held Gelt responsible for actions attributable to Mr. Shimmin, who advised the Debtor in its early water transactions. Even assuming that these actions could somehow be brought within the ambit of Rule 11 in connection with certain pleadings, Gelt's responsibility cannot be extended into areas in which he did not advise the Debtor. Therefore, the award of sanctions under Rule 9011 against Gelt must be reversed.

3. *Did Gelt Violate 28 U.S.C. § 1927?*

■ The court alternatively imposed sanctions against Gelt under 28 U.S.C. § 1927. This statute permits a court to require any attorney who "unreasonably and vexatiously" multiplies the proceedings "to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Sanctions under § 1927 are appropriate 'for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties.' " *Griffen,* 3 F.3d at 342 (quoting *Braley,* 832 F.2d at 1512). Under this standard, an attorney's conduct must be "extreme," *see White v. American Airlines, Inc.,* 915 F.2d 1414, 1427 (10th Cir.1990), and an award should be made only in circum-

stances showing a " 'serious and standard disregard for the orderly process of justice.' " *Dreiling v. Peugeot Motors of Am., Inc.,* 768 F.2d 1159, 1165 (10th Cir.1985) (citing *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163, 1167 (7th Cir.1968)); *see also White v. American Airlines, Inc.,* 915 F.2d at 1427.

In finding a violation of § 1927, the court again focused on the water rights transactions and alleged lack of any feasible plan of reorganization. The court stated:

> There never was a factual or legal basis for arguing and maintaining that throughout this case, as the Debtor and its attorneys did, that the transfer of the water rights to Point South was for valid consideration. Similarly, there was no factual or legal basis for the Debtor's purported "reorganization" given the facts and circumstances of this case.

(R.Doc. 276 at 28.) Specifically, the court found that Gelt's actions, commencing with the filing of the objection to the Janowitzes' motion for relief from the stay, unjustifiably multiplied the proceedings. I do not agree.

In addition to the reasons I outlined above in connection with Rule 9011 sanctions, the bankruptcy court ignored the existing record in the case and the findings made by the previous presiding bankruptcy court judge, particularly in connection with the Janowitzes' motion for relief from the stay, upon which Gelt relied in continuing to advise his client. For example, in the hearing on the motion for relief from the stay, Judge Brooks did not find evidence of bad faith, and in fact indicated that the Debtor's attempted reorganization was a product of "good faith hope," (*see* Tr.Supp. Vol. III at 10), that the Debtor's principals were perhaps unrealistic but were "victimized by a very depressed market" for lot sales, (*id.*), that the market dictated their failure despite the "good faith or good hope" of the Debtor's principals, (*id.* at 11), that the Debtor's overstatement of assets and understatement of liabilities could not be "attributed to malevolence or deceit," (*id.* at 12), and that the Debtor and its principals truly desired an effective reorganization, (*id.*).

Likewise, while Judge Brooks indicated his "interest and concern" over the water rights transactions, (*id.* at 14), the sole inference he drew from the evidence presented at that point, which did not change materially after the case was transferred to Judge Cordova, was that

[t]he principals behind this debtor, who got the water rights through their organization, Point South ... they could have returned the water rights to this debtor if they had wanted to do so, and that would have made this debtor a very, very strong, financially solvent business operation. It would have made it very strong and it certainly would have made it invulnerable, probably, to a relief from stay action, and it would have given it all the wherewithal, all the momentum for a very successful reorganization. It would have been a slam dunk for the debtor to have gone forward and defeated the creditor's efforts, I think.

(*Id.* at 15.)

In holding Gelt liable under § 1927, Judge Cordova unfairly penalized Gelt for relying on Judge Brooks' statements and not anticipating his contrary view of the same events. I cannot conclude that a reasonable attorney, under similar circumstances, would not have taken the actions Gelt did in obtaining a retransfer of the water rights, seeking reconsideration of the order granting relief from the stay, and pressing for a determination of which parties held an interest in the water rights. This is particularly so, in view of Judge Brooks' comment that such actions would undeniably have prevented it from granting relief from the stay. *Cf. Browning Ave. Realty Corp. v. Rosenshein,* 142 F.R.D. 85, 91 (S.D.N.Y.1992) (Rule 11 sanctions improperly imposed where court invited party to file amended pleading). Therefore, I find that the bankruptcy court abused its discretion in sanctioning Gelt under § 1927. For the same reasons discussed in connection with Bamford's appeal, I also conclude that the amounts awarded under Rule 9011 and § 1927 were excessive.

### E. *Janowitzes' Cross–Appeal.*

In their cross-appeal, the Janowitzes assert that, not only should sanctions against Bamford and Gelt be upheld, but the Debtor should be sanctioned as well. The Trustee responds that this would be futile and would only harm the unsecured creditors of the estate, since the Debtor has few, if any, remaining assets with which to pay such a judgment. The Janowitzes respond that they would be willing to subordinate their "claim" for sanctions to the claims of unsecured creditors, without citing authority for the proposition that a judgment imposing sanctions in their favor is equivalent to a "claim" which can be equitably subordinated.

For the reasons already discussed, I conclude that the standards of Rule 9011 and 28 U.S.C. § 1927 were not violated in this case. Therefore, I find that the bankruptcy court did not err in not imposing sanctions against the Debtor.

### III. *Conclusion.*

Under the most favorable circumstances the judicial goal of providing fair, consistent and predictable results is not easy to achieve. Indeed, given the reality of multitudinous cases, captious litigants and cacophonous rhetoric, it is no small wonder when the goal is even approximated. When, however, cases are transferred in the midst of the adjudicative process from one judge to another, the chances for successful achievement are significantly reduced. This appeal is not the appropriate vehicle for a full explanation of the subject, but the events described in this opinion offer a bright-lined illustration of the confusion to be anticipated. Such a situation should raise warning flags for all to see.

IT IS ORDERED THAT the judgment of the bankruptcy court is REVERSED as to the entry of sanctions under Bankruptcy 9011 against Gregory L. Bamford and under Bankruptcy Rule 9011 and 28 U.S.C. § 1927 against Howard Gelt. The judgment is AFFIRMED as to denial of sanctions against the Debtor.